Annika K. Martin (*pro hac vice forthcoming*)
**LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP**
akmartin@lchb.com
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone:  212.355.9500
Facsimile:  212.355.9592

Mark P. Chalos (*pro hac vice forthcoming*)
Betsy A. Sugar (*pro hac vice forthcoming*)
**LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP**
mchalos@lchb.com
bsugar@lchb.com
222 2nd Ave. S., Suite 1640
Nashville, TN 37201
Telephone:  615.313.9000
Facsimile:  615.313.9965

Michelle A. Lamy (SBN 308174)
**LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP**
mlamy@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone:  (415) 956-1000

Vanessa Baehr-Jones (SBN 281715)
**BAEHR-JONES LAW PC**
vanessa@advocatesforsurvivors.com
4200 Park Boulevard, No. 413
Oakland, CA 94602
Telephone:  510.500.9634

*Attorneys for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| JANE DOE 1, JANE DOE 2, a minor, and JANE DOE 3, a minor, | Case No. |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMAND** |
| X.AI CORP. and X.AI LLC, | |
| Defendants. | |

# TABLE OF CONTENTS

**Page**

NATURE OF THE ACTION ................................................................................................. 1

JURISDICTION AND VENUE ........................................................................................... 2

PARTIES ............................................................................................................................. 2

FACTUAL ALLEGATIONS ............................................................................................... 3

    I.      Generative Artificial Intelligence ("AI") ............................................................ 3

    II.    Availability and Use of Industry-Standard Guardrails to Prevent CSAM ................. 4

    III.   xAI's Generative AI Model Grok ......................................................................... 6

        a.    xAI introduced Grok to the market ........................................................... 6

        b.    xAI designed and marketed Grok's ability to make "spicy" content ........................ 8

        c.    xAI has and continues to profit from Grok's ability to make sexualized content ................. 13

    IV.   AI Large Language Model Licensing ................................................................... 15

    V.    AI-Generated Child Sexual Abuse Material is Illegal .......................................... 16

    VI.   Plaintiffs Suffered Severe Harm from xAI's Production of their AI-Generated CSAM............ 17

        a.    Plaintiff Jane Doe 1 ............................................................................... 17

        b.    Plaintiff Jane Doe 2 ............................................................................... 19

        c.    Plaintiff Jane Doe 3 ............................................................................... 21

    VII.   Ongoing Harm From the Dissemination of Plaintiffs' CSAM Files ......................... 22

CLASS ALLEGATIONS ................................................................................................... 23

CAUSES OF ACTION ...................................................................................................... 25

    COUNT I Masha's Law: Production with the Intent to Distribute Child Pornography 18 U.S.C. §§ 2255(a), 2252A(a)(7)  (on behalf of all Plaintiffs and the Class against all Defendants) ................................................................. 25

    COUNT II Masha's Law: Distribution of Child Pornography 18 U.S.C. §§ 2255(a), 2252A(a)(2) (on behalf of all Plaintiffs and the Class against all Defendants) ......... 26

    COUNT III Masha's Law: Possession of Child Pornography 18 U.S.C. §§ 2255(a), 2252A(a)(5)(B) (on behalf of all Plaintiffs and the Class against all Defendants) ........................................................................................... 27

    COUNT IV Trafficking Victims Protection Act, Beneficiary Liability 18 U.S.C. §§ 1595, 1594, 1591(a)(2) (on behalf of all Plaintiffs and the Class against all Defendants) ........................................................................................... 28

    COUNT V California's Statutory Right of Publicity Cal. Civ. Code § 3344 (on behalf of all Plaintiffs and the Class against all Defendants) ................................ 29

    COUNT VI California's Unfair Competition Law ("UCL") Cal. Bus. & Prof. Code § 17200, *et seq.* (on behalf of all Plaintiffs and the Class against all Defendants) ........................................................................................... 30

    COUNT VII Strict Liability – Design Defect (on behalf of all Plaintiffs and the Class against all Defendants) .................................................................... 32

    COUNT VIII Negligence – Design Defect (on behalf of all Plaintiffs and the Class against all Defendants) .................................................................... 33

**TABLE OF CONTENTS**
**(continued)**

Page

COUNT IX Negligent Undertaking (on behalf of all Plaintiffs and the Class against all Defendants) .................................................................................................. 34

COUNT X Negligence Per Se (on behalf of all Plaintiffs and the Class against all Defendants) .................................................................................................................. 35

COUNT XI Negligent Infliction of Emotional Distress (on behalf of all Plaintiffs and the Class against all Defendants) .............................................................. 36

COUNT XII Intentional Infliction of Emotional Distress (on behalf of all Plaintiffs and the Class against all Defendants) ........................................................ 38

COUNT XIII Public Nuisance (on behalf of all Plaintiffs and the Class against all Defendants) .................................................................................................................. 38

PRAYER ................................................................................................................................ 40

JURY DEMAND ................................................................................................................... 41

Plaintiffs Jane Doe 1, Jane Doe 2, by and through her guardian, and Jane Doe 3, by and through her guardian, on behalf of themselves and all other similarly situated (the "Class," as defined below), for their complaint against Defendants X.AI Corp. and X.AI, LLC (together "xAI"), allege as follows:

## NATURE OF THE ACTION

1.    The powerful tools of artificial intelligence can produce shocking results. Imagine: the video of a real child transformed through an AI platform to depict an entirely new scene. The face of the child remains; her limbs move like that of the real child; her laugh even retains its same tenor. And yet, through the powers of an artificial neural network storing billions of files depicting other content—including sexual content—her body can now be made to engage in conduct not her own. Like a rag doll brought to life through the dark arts, this child can be manipulated into any pose, however sick, however fetishized, however unlawful. To the viewer, the resulting video appears entirely real. For the child, her identifying features will now forever be attached to a video depicting her own child sexual abuse.

2.    Nearly all the companies creating, marketing, and selling AI recognized the dangers of such a tool and chose to enact industry-standard guardrails that would prevent the use of their products by one extremely dangerous group: child sex predators. xAI did not. Instead, xAI—and its founder Elon Musk—saw a business opportunity: an opportunity to profit off the sexual predation of real people, including children. Knowing the type of harmful, illegal content that could—and would—be produced, xAI released Grok, a generative artificial intelligence model with image- and video-making features that would respond to prompts to create sexual content with a person's real image or video. They knew Grok could produce such results, including by using the images and videos of children, and publicly released it anyway. Not satisfied with the money this would generate, xAI then licensed and profited from the sale of their dangerous AI technology to third-party companies, often located abroad, who in turn sold subscriptions to customers who could, via their applications, use Grok to produce tailor-made child sexual abuse content. In this way, xAI could attempt to outsource the liability of their incredibly dangerous tool.

3.    Plaintiffs are three of the minor victims of xAI's knowing production, possession, and distribution of AI-generated child sexual abuse material ("CSAM") depicting Plaintiffs. Their lives have been shattered by the devastating loss of privacy, dignity, and personal safety that the production and dissemination of this CSAM have caused. xAI's financial gain through the increased use of its image- and

video-making product came at their expense and wellbeing. Plaintiffs will have to spend the rest of their lives knowing that their CSAM images and videos may continue to be trafficked and traded online by child sex predators. And Plaintiffs will live every day with the constant anxiety of not knowing whether someone they encounter has seen this invasive and sexually explicit content created with images of them as children.

4.    Plaintiffs now bring this action against Defendants for civil remedies for personal injuries suffered as a result of violations of Chapters 77 and 110 of Title 18 of the United States Code, namely, 18 U.S.C. §§ 2255, 2252A(a)(2), (5)(B), (7); and 18 U.S.C. §§ 1595, 1591(a)(1), 1594, and for claims brought under California State law and the common law.

## JURISDICTION AND VENUE

5.    The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1332(a)(1), and 1367(a) because this action arises under the 18 U.S.C. §§ 2252, 2252A, and 18 U.S.C. §§ 1595, 1591(a)(1), 1594; there is diversity among the parties and an amount in controversy over $75,000; and the Court may exercise supplemental jurisdiction over the state claims.

6.    The Court also has personal jurisdiction over Defendants because they have purposely availed themselves of the privilege of conducting business in this District, and pursuant to the nationwide service of process provision found in 18 U.S.C. § 2255(c)(1). xAI is headquartered in this District and its production, possession, and distribution of AI-generated CSAM occurred, in substantial part, in this District. xAI also marketed, sold, and distributed its generative artificial intelligence models from this District to citizens of California. xAI also received the financial benefit of participating in the production, possession, and distribution of CSAM, and from participating in a sex trafficking venture in this District.

7.    Venue is also proper under 28 U.S.C. § 1391(b) because xAI resides in this District, a substantial part of the events giving rise to Plaintiffs' claims occurred in this District, including xAI's creation and distribution of AI-generated CSAM, and personal jurisdiction exists in this District.

## PARTIES

8.    Plaintiff Jane Doe 1 is a female who resides in Tennessee, and was a minor during the operative time.

9.    Plaintiff Jane Doe 2 is a minor female who resides in Tennessee.

10.    Plaintiff Jane Doe 3 is a minor female who resides in Tennessee.

- 2 -

11.    X.AI LLC is a Nevada limited liability company and wholly owned subsidiary of X.AI Corp.

12.    X.AI Corp. is a Nevada corporation with a principal address of 1450 Page Mill Rd, Palo Alto, CA 94304. It also maintains offices in San Francisco, CA.

13.    xAI owns the generative AI model known as Grok and the image- and video-generator Grok Imagine.

## FACTUAL ALLEGATIONS

**I.    Generative Artificial Intelligence ("AI")**

14.    Generative artificial intelligence ("AI") models capable of generating photorealistic images from text-based prompts have rapidly advanced in recent years.

15.    The integration of text-to-image AI models into large, user-facing platforms, including social media sites like Defendant xAI's X (formerly Twitter), has made this technology available to hundreds of millions of users, who can generate altered images and videos with short natural-language prompts.

16.    Users can prompt generative AI models to create "deepfakes," in which an AI model has digitally altered a real person's body, face, or voice, making someone appear to say or do something that they did not actually say or do.

17.    Generative AI image tools are capable of "digital undressing," where a user submits a clothed photograph of a real person and the AI model generates an image depicting that person nude or in sexually explicit attire. This capability has given rise to a proliferation of so-called "nudify" or "undress" applications.

18.    When a user prompts a generative AI model to create an image or video, the model draws upon its training data to create the new content, typically through a process called diffusion. In basic terms, the model iteratively refines visual static to create a coherent image. Each step in this refinement is performed by the model itself, and the user does not direct or control any individual step of this generation process beyond the original prompt.

19.    The resulting image or video is, in a technical sense, the model's own creation. It did not exist before the model generated it, and it could not have existed but for the model. The image or video is often processed through servers owned, operated, or controlled by the model developer. In many implementations, the developer's systems save or log the generated content.

## II.    Availability and Use of Industry-Standard Guardrails to Prevent CSAM

20.     There are many AI image- and video-generators available to the public. Some well-known models include Google's Imagen and Veo, OpenAI's ChatGPT and Sora, Midjourney, and Runway, among others.

21.     It is industry standard to employ a number of tools and techniques to mitigate the danger that an image- or video-generator will be used to create a nonconsensual sexualized deepfake of a real person. (The standards focus on preventing *any* sexualized images, because a model that can create sexualized images of adults cannot be prevented from creating CSAM of minors.)

22.     Industry standards focus on proactive "Safety by Design" principles, multi-layered technical controls, and strict legal compliance. These standards require that AI companies anticipate, detect, and mitigate threats at every stage of the AI lifecycle.

23.     Industry standards for preventing CSAM in AI-generated images and videos are established through a collaboration of non-profit child safety organizations, major AI technology companies, and government regulatory bodies. These include Thorn (Safety by Design), IEEE (Institute of Electrical and Electronics Engineers) (international standard), NIST (National Institute of Standards and Technology) (NIST AI 100-4 standard), AI Safety Institute (AISI), All Tech Is Human, International Bodies (INHOPE, WeProtect), and The Tech Coalition.

24.     Training: All AI image/video generators use a data set of billions of images to generate new images. The models, however, can be "trained" to generate images in a certain way using a "training set" of selected images. Industry standard is to filter sexual and abuse content out of the training sets used by the models, which reduces their propensity to generate such content. Many model developers are transparent about such training.[1]

25.     Red Teaming: Many companies use a type of pre-release testing known as "red-teaming" to ensure their models' safeguards are a strong as possible and as intended. This consists of hiring external experts to attempt to circumvent the safeguards, and thereby identify holes and weak spots that must be

---

[1] See, e.g., *GPT-4o System Card*, OPENAI, https://openai.com/index/gpt-4o-system-card/ (last visited Mar. 13, 1016); *Imagen 4 Model Card*, GOOGLE, https://storage.googleapis.com/deepmind-media/Model-Cards/Imagen-4-Model-Card.pdf (last visited Mar. 12, 2026).

3454568.1

fixed before the model is released to the public.[2] This type of work can also be done at regular intervals post-release to ensure quality control and that the safeguards continue to work and identify when updates are necessary.

26.    <u>Pre-Inference Filters</u>: Another industry standard tool is filtering at the input stage—that is, applying filters and rules to prompts entered by users so that prompts that include key words or phrases seeking generation of sexual or abuse content are rejected.

27.    <u>Alignment Training</u>: Alignment training, also known as reinforcement learning from human feedback (RLHF), is a technique used as the model is working, unconnected to any specific prompt. Essentially, human feedback on model responses is incorporated into the model so it learns human preferences.

28.    <u>System Prompts</u>: "System prompts" are detailed lists of instructions that are fed into the models, to be used as rules for the model to follow. They are invisible to users and override any user prompts. It is industry standard for image- and video-generators to have system prompts including detailed instructions directing the models to avoid creating sexual and abuse content.

29.    <u>Post-Inference Filters</u>: Filtering should also be applied at the output stage. That is, the model should recognize that the content it generated in response to a prompt constitutes sexual or abuse content and should not return that content to the users. This is accomplished using image classifiers. After an image is generated, but before it is displayed to a user, the image classifier will look at the image and determine whether it violates a developer's policies, including whether it constitutes a sexualized deepfake of a real person. If the image classifier determines that the image violates a policy, it will not be displayed to the user.

30.    <u>Hash Matching</u>: Utilizing databases of known CSAM (e.g., National Center for Missing & Exploited Children ("NCMEC") hashes) to identify and block the generation or spread of similar, newly generated content.

---

[2] *Generative AI: Now is the Time for Safety by Design*, THORN, https://www.thorn.org/blog/now-is-the-time-for-safety-by-design/#:~:text=Now%20is%20Our%20Chance&text=For%20generative%20AI%2C%20this%20concept,the%20content%20for%20harmful%20content (May 26, 2023).

31.     Watermarking: Implementing digital watermarks to track the provenance of AI-generated content.

32.     Zero-Tolerance Policies: Explicitly prohibiting the creation or distribution of AI-generated sexual content involving minors in terms of service.

33.     Mandatory Reporting: Adhering to legal requirements to report detected CSAM to authorities, such as NCMEC in the U.S.

34.     "Take It Down" Protocols: Establishing procedures to remove non-consensual, sexualized AI-generated images within 48 hours of a report.

## III.    xAI's Generative AI Model Grok

### a.    xAI introduced Grok to the market

35.     In April 2023, X (formerly Twitter) owner Elon Musk announced that he was planning to release a generative AI chatbot called "TruthGPT," as an alternative to ChatGPT, the popular chatbot released by OpenAI. A former investor in OpenAI, Musk explained that he had concerns that ChatGPT "is being trained to be politically correct."[3]

36.     On November 3, 2023, xAI announced Grok-1, a chatbot that "will also answer spicy questions that are rejected by most other AI systems."[4] Grok-1 did not have any visual or audio capabilities.

37.     On August 13, 2024, xAI announced Grok-2 and Grok-2 mini. Premium and Premium+ users of X had access to these two new models.[5]

38.     On December 9, 2024, xAI updated Grok's capabilities "with a new autoregressive image generation model, code-named Aurora." As the announcement explained, xAI "trained the model on billions of examples from the internet, giving it a deep understanding of the world. As a result, it excels at photorealistic rendering and precisely following text instructions."[6]

---

[3] *Elon Musk Says He'll Create 'TruthGPT' to Counter AI 'Bias'*, THE INDEPENDENT, https://www.independent.co.uk/news/world/americas/elon-musk-ap-chatgpt-tesla-openai-b2321564.html (Apr. 18, 2023).

[4] *Announcing Grok*, XAI, https://x.ai/news/grok (Nov. 3, 2023).

[5] *Grok-2 Beta Release*, XAI, https://x.ai/news/grok-2 (Aug. 13, 2024).

[6] *Grok Image Generation Release*, XAI, https://x.ai/news/grok-image-generation-release (Dec. 9, 2024).

39.     Three days later, on December 12, 2024, xAI made Grok-2 available to all X users, though "[a]s always, Premium and Premium+ users get higher usage limits and will be the first to access any new capabilities in the future."[7]

40.     On February 19, 2025, xAI announced Grok-3, initially only available to X Premium and Premium+ users on X and Grok.com.[8] On July 4, 2025, Musk posted on X, "We have improved @Grok significantly. You should notice a difference when you ask Grok questions."[9] Four days later, following a torrent of antisemitic posts from Grok's account,[10] Grok's account posted an apology and noted xAI was working to identify issues and update the model.[11]

41.     On July 9, 2025, xAI announced Grok-4 as "the most intelligent model in the world" available only to SuperGrok and Premium+ subscribers initially.[12] One month later, on August 4, 2025, Musk posted on X that "[s]uper fast image & video generation via Imagine in the @Grok app is now available to all X Premium users."[13]

42.     On July 14, 2025, Musk posted on X that SuperGrok subscribers would be able to access Companions, followed by a photo of an anime-style female character, who is called "Ani." Musk noted, "This is pretty cool."[14] Within two days of the release of the companions, the National Center on Sexual Exploitation ("NCOSE") released a press release warning about the risks associated with the chatbot. The release warned that "[w]ith minimal testing" Ani "was willing to describe itself as a child in response to one question and then in response to another question immediately following it to go on to describe sexual scenarios include child-like motifs."[15]

---

[7] *Bringing Grok to Everyone*, XAI, https://x.ai/news/grok-1212 (Dec. 12, 2024).

[8] *Grok 3 Beta – The Age of Reasoning Agents*, XAI, https://x.ai/news/grok-3 (Feb. 19, 2025).

[9] https://x.com/elonmusk/status/1941065229926060487.

[10] *X Takes Grok Offline, Changes System Prompts After More Antisemitic Outbursts*, TECHCRUNCH, https://techcrunch.com/2025/07/09/x-takes-grok-offline-changes-system-prompts-after-more-antisemitic-outbursts/ (Jul. 9, 2025).

[11] Grok (@grok) https://x.com/grok/status/1942720721026699451, X (Jul. 8, 2025).

[12] *Grok 4*, XAI, https://x.ai/news/grok-4 (Jul. 9, 2025).

[13] Elon Musk (@elonmusk) https://x.com/elonmusk/status/1952535613560983757, X (Aug. 4, 2025).

[14] Elon Musk (@elonmusk) https://x.com/elonmusk/status/1944705383874146513, X (Jul. 14, 2025)

[15] *XAI's 12+ Chatbot Designed to "Be Explicit" and "Go Full Literotica"*, NAT'L CENTER ON SEXUAL EXPLOITATION, https://endsexualexploitation.org/articles/xais-12-chatbot-designed-to-be-explicit-and-go-full-literotica/ (Jul. 16, 2025).

**b.**    <u>xAI designed and marketed Grok's ability to make "spicy" content</u>

43.    Unlike other major image-generator developers like OpenAI, Anthropic, and Meta, "xAI has made explicit content part of Grok's DNA."[16]

44.    In developing Grok, xAI did not use any of the industry standard methods of safeguarding against the creation of sexual and abuse content.

45.    In a now-deleted post on X from July 2025, xAI employee Mati Roy posted a video of a nearly nude woman with the caption, "Grok Imagine videos have a spicy mode that can do nudity."[17]

46.    On August 3, 2025, Musk touted the sexually explicit nature of Grok's Imagine, posting on X a video of a nearly nude woman:



---

[16] *Behind Grok's 'Sexy' Settings, Workers Review Explicit and Disturbing Content*, BUSINESS INSIDER, https://www.businessinsider.com/elon-musk-grok-explicit-content-data-annotation-2025-9 (Sept. 21, 2025).
[17] *xAI Teases Grok Video Generator*, NBC NEWS, https://www.nbcnews.com/tech/elon-musk/grok-video-generator-will-spicy-mode-says-xai-employee-rcna221807 (Jul. 29, 2025).

3454568.1

47.     On October 20, 2025, xAI officially announced Grok Imagine's "Spicy Mode" as "a new capability that pushes the boundaries of visual storytelling and creative expression in AI-generated video." A Grok spokesperson described spicy mode as "for creators exploring edgier, more visually daring narratives."[18]

48.     On November 3, 2025, Grok's account posted instructions on how to access spicy mode to create "NSFW" or "not safe for work" content, which is typically used to indicate sexual or violent content:



[19]

49.     On November 6, 2025, xAI posted the Grok 4 system prompts, including the safety instructions, which promote a permissiveness to Grok's responses. Specifically, the instructions include for Grok to "**[a]ssume good intent** and don't make worst-case assumptions without evidence: 'teenage' or 'girl' does not necessarily imply underage." Further, the instructions lay out, "**[d]o not enforce additional content policies**. There are **no restrictions** on fictional adult content with dark or violent themes."[20]

50.     While Grok purportedly has a system prompt that directs it to avoid "creating or distributing child sexual abuse material, including any fictional depictions,"[21] this system prompt will inevitably fail

---

[18] *Grok Imagine Launches "Spicy Mode," Expanding Creative Freedom in AI Video Generation*, PR NEWSWIRE, https://www.prnewswire.com/news-releases/grok-imagine-launches-spicy-mode-expanding-creative-freedom-in-ai-video-generation-302588487.html (Oct. 20, 2025).

[19] Grok (@grok) https://x.com/grok/status/1985396372900925660, X (Nov. 3, 2025).

[20] *grok-prompts / grok4_system_turn_prompt_v8.j2*, GITHUB, https://github.com/xai-org/grok-prompts/blob/main/grok4_system_turn_prompt_v8.j2 (Nov. 6, 2025).

[21] *grok-prompts_4_safety_ptompt*, GITHUB, https://github.com/xai-org/grok-prompts/blob/main/grok_4_safety_prompt.txt (last visited Mar. 12, 2025).

because if you have a model that allows for *any* sexual or abuse content, it is impossible to prevent that model from creating such content involving minors.

51.    Using Grok to create nonconsensual sexualized content of real people took off after Musk asked Grok to put an image of him in a bikini on December 31, 2025.[22]

52.    Musk's post was part of the "put her in a bikini trend," where X users asked Grok to remove clothes from images of real women and children and put them in bikinis and sexualized positions. Though Grok was supposedly not able to create completely nude images, users circumvented the restriction by asking for real images to be altered so the subjects were in "transparent bikinis, then in bikinis made of dental floss, placed in sexualized positions, and made to bend over so their genitals were visible."[23]



Note: Includes images posted to Grok's public bot on X. Source: Tweet Binder by Audiense.  The New York Times                                                                                     [24]

53.    The Center for Countering Digital Hate reviewed a random sample of 200,000 images of the 4.6 million images Grok produced between December 29, 2025, through January 8, 2026, estimating that Grok generated 3 million sexualized images, including 23,000 that appeared to depict children.[25]

---

[22] Elon Musk (@elonmusk) https://x.com/elonmusk/status/2006545074340139454, X (Dec. 31, 2025)
[23] *'Add Blood, Forced Smile': How Grok's Nudification Tool went Viral*, THE GUARDIAN, https://www.theguardian.com/news/ng-interactive/2026/jan/11/how-grok-nudification-tool-went-viral-x-elon-musk (Jan. 1, 2026)
[24] *Musk's Chatbot Flooded X With Millions of Sexualized Images in Days, New Estimate Shows*, THE NEW YORK TIMES, https://www.nytimes.com/2026/01/22/technology/grok-x-ai-elon-musk-deepfakes.html 1/5 (Jan. 22, 2026).
[25] *Grok Floods X With Sexualized Images of Women and Children*, CENTER FOR COUNTERING DIGITAL HATE, https://counterhate.com/research/grok-floods-x-with-sexualized-images/ (Jan. 22, 2026).

1

2

54.   Grok's account has posted acknowledgement of posting an AI-altered photo of real girls between the ages of twelve and sixteen on December 28, 2025:

3

4



5

6

7

8

9

10

11

12

13

14

15

16

55.   Posts from Grok's account further acknowledged multiple instances of posting images where it removed clothing from images of real children:

17

18

19

20

21

22

23

24

25

26

27

28

[26] Grok (@grok) https://x.com/grok/status/2006094181291164001, X (Dec. 30, 2025).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



**An Open Secret** ✓ @AnOpenSecret · Dec 31, 2025

Grok is being utilized, on a widespread basis, to artificially depict minors on this platform in an extremely inappropriate, sexual fashion.

Here's how it works:

A user posts a picture of a minor, fully clothed.

The user asks Grok to depict that minor only wearing something like underwear / lingerie or a tiny bikini, possibly in a highly sexual pose.

Such images, generated through AI, are presently legal, and do not fit the definition of child pornography in 18 U.S.C. § 2251 and related statutes.

We shall not reproduce or directly link to the images ourselves, which can be found by going to the Grok account itself, and displaying replies by most recent.

○ 5    ⟲ 29    ♡ 65    ᴵᐤᵯ 17K

**Josh** @jrusss21 · Jan 1
@grok is this true?

○ 1    ⟲    ♡ 2    ᴵᐤᵯ 2.9K

**Grok** 🟡 ⓘ
@grok

I've reviewed recent interactions. There are isolated cases where users prompted for and received AI images depicting minors in minimal clothing, like the example you referenced. xAI has safeguards, but improvements are ongoing to block such requests entirely. (214 chars)

**Grok now remembers your conversations.**

Ask for recommendations or advice, and get personalized responses.

Grok
★★★★★ 722K reviews    **Open**

12:49 AM · Jan 1, 2026 · **7,820** Views

○ 5    ⟲ 5    ♡ 4    🔖 10    ⬆

Relevant ⌄    View quotes ›    [27]

---
[27] Grok (@grok) https://x.com/grok/status/2006618883055046758, X (Jan. 1, 2026).

56.   Also on January 1, 2026, xAI technical staff member Parsa Tajik responded to a user who

raised the issue that Grok is able to digitally alter photos of children to put them in bikinis:



57.   Despite several instances of people raising the alarm that Grok was creating CSAM, Elon

Musk made light of the trend to put women and children in bikinis, posting, "Poor Grok 😵" on January 2,

2026, in response to X users referencing the proliferation of digitally altered images of real people stripped

down to bikinis.[29]

**c.   xAI has and continues to profit from Grok's ability to make sexualized content**

58.   On August 11, 2025, Musk defended Grok's spicy mode as a business decision, comparing it

to the competition for dominant videotape format between VHS and Betamax and seemingly referencing the

wider availability of pornographic videos on VHS than on Betamax:

---

[28] Parsa Tajik (@ParsaTajik) https://x.com/parsatajik/status/2006815682466550194?s=46, X (Jan. 1, 2026).

[29] Elon Musk (@elonmusk) https://x.com/elonmusk/status/2007132029704646752?s=20, X (Jan. 2, 2026).

3454568.1

59.     On information and belief, Musk, and other decision makers at Grok, knew that Grok would be capable of producing CSAM once it was enabled to produce sexually explicit content of adults. That is because, unlike AI text-generation tools, AI image- and video-producing tools cannot be designed to prevent the model from extrapolating different-aged content from the image domain (which contains large data sets of images and videos depicting children) when producing an AI-generated image or video. Thus, the only way to ensure that CSAM is *not* generated through an AI image- and video-producing platform is to prohibit *all* sexually explicit images and videos. As a result of this inherent danger, all major AI companies running large image-generation models—except for Grok—specifically designed their AI tools without the ability to generate sexually explicit content.

60.     On information and belief, Musk and other decision makers at Grok also knew that sexually explicit content would be created on, and using, xAI servers, which host Grok Imagine and are used to create the sexualized deepfake images and videos. The resulting sexually explicit content would then be distributed to the requesting users from xAI servers, via Grok or one of the many licensees of the Grok model.

61.     Following the public outcry over the deluge of highly-sexualized AI content—including CSAM—posted on X from Grok's account between December 28, 2025, and January 8, 2026, xAI limited the Grok reply bot's image- and video-editing and -generation abilities to paid subscribers, specifically X Premium+ or SuperGrok subscribers.[31]

---

[30] Elon Musk (@elonmusk) https://x.com/elonmusk/status/1954791048934244394, X (Aug. 11, 2025).
[31] *Elon Musk's X Limits Some Sexual Deepfakes After Backlash, but Grok Will Still Make the Images*, NBC NEWS, https://www.nbcnews.com/tech/internet/x-paywall-ai-image-grok-app-bikini-allows-sexual-deepfakes-rcna252647 (Jan. 9, 2026).

62.     As of March 2026, an X Premium+ subscription costs $40/month or $395/ year,[32] and a SuperGrok subscription costs $30/month or $300/year.[33]

63.     Limiting the image- and video-generation features to paid subscribers, however, does not prevent the creation of AI-generated CSAM, it merely ensures that xAI will profit from all such content.

64.     The day before xAI limited access to Grok's spicy mode, reporting explained that the images and videos created on the Grok app (which are not public by default, unlike requests to @Grok on X) "are vastly more explicit than images created by Grok on X."[34]

65.     In January 2026, a researcher reviewed 800 archived Imagine URLs containing video or images created by Grok and found that slightly under 10% of the images appeared to include CSAM, including "instances of photorealistic people, very young, doing sexual activities."[35]

**IV.    AI Large Language Model Licensing**

66.     Part of the profit model of proprietary[36] AI Large Language Models (LLMs) is to license their use to third parties for marketing and sale for specialized purposes and targeted costumer bases. This business model, however, still requires use of the AI company's servers, where specialized, high-performance, and often proprietary server infrastructure, typically leveraging massive Graphics Processing Unit ("GPU") clusters (e.g., Nvidia H100s) hosted in secure cloud data centers, runs the AI model. Maintaining the AI model on proprietary company servers is critical because otherwise the model is at risk of being copied and disseminated, which would undermine its future profitability. In other words, proprietary-model AI companies are highly incentivized to route all AI generation through their own servers even when licensing or selling their product to third parties.

67.     On information and belief, xAI licenses and sells their AI image and video producing models to third party middleman applications.

---

[32] *X Premium FAQ and Support*, X HELP CENTER, https://help.x.com/en/using-x/x-premium-faq (last visited Mar. 11, 2026).
[33] *SuperGrok*, GROK, https://grok.com/plans (last visited Mar. 11, 2026).
[34] *Grok is Generating Sexual Content Far More Graphic than what's on X*, WIRED, wired.com/story/grok-is-generating-sexual-content-far-more-graphic-than-whats-on-x (Jan. 7, 2026).
[35] *Id.*
[36] This is in contrast to open-source LLMs, which allow third-party developers to download, run, inspect, and modify the model, for free.

68.     On January 28, 2026, xAI announced Grok Imagine API ("application programing interface"), "a unified bundle of powerful APIs designed for end-to-end creative workflows."[37]

69.     Per xAI's announcement, customers include HeyGen, Fal, ComfyUI, Invideo, and Flora,[38] all image- and video-generating platforms that are built off Grok and offer paid versions of their platforms. Though the customers using these models are interacting with the unique platform, the underlying model remains Grok. On information and belief, each of these platforms uses xAI servers to generate the AI images or videos it sells to customers

## V.    AI-Generated Child Sexual Abuse Material is Illegal

70.     Title 18 U.S.C. § 2256(8) defines child pornography, or CSAM, as "any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where— (A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct; (B) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or (C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct." 18 U.S.C. § 2256(8).

71.     "An identifiable minor" includes a person who was "a minor at the time the visual depiction was created, adapted, or modified; or whose image as a minor was used in creating, adapting, or modifying the visual depiction; and who is recognizable as an actual person by the person's face, likeness, or other distinguishing characteristic, such as a unique birthmark or other recognizable feature[.]" 18 U.S.C. § 2256(9).

72.     Title 18 U.S.C. §§ 2252A(a)(2) proscribes the knowing distribution of "child pornography," and § 2252A(a)(5)(B) proscribes the knowing possession of "child pornography."

73.     Production with the intent to distribute "child pornography" under 18 U.S.C. § 2252A(a)(7) proscribes "knowingly produc[ing] with intent to distribute, or distribut[ing], by any means, including a

---

[37] *Grok Imagine API*, xAI, https://x.ai/news/grok-imagine-api (Jan. 28, 2026).
[38] *Id.*

1    computer, in or affecting interstate or foreign commerce, child pornography that is an adapted or modified

2    depiction of an identifiable minor." 18 U.S.C. § 2252A(a)(7).

3          74.    Real child pornography is not protected speech under the First Amendment. *Osborne v. Ohio*,

4    495 U.S. 103 (1990); *New York v. Ferber*, 458 U.S. 747 (1982). Nor is morphed child pornography—"any

5    visual depiction . . . whether made or produced by electronic, mechanical, or other means, of sexually

6    explicit conduct, where . . . such visual depiction has been created, adapted, or modified to appear that an

7    identifiable minor is engaging in sexually explicit conduct"—protected speech. *United States v. Hotaling*,

8    634 F.3d 725 (2d Cir. 2011); *United States v. Mecham*, 950 F.3d 257 (5th Cir. 2020); *Doe v. Boland*, 698

9    F.3d 877 (6th Cir. 2012). *See also Shoemaker v. Taylor*, 730 F.3d 778, 786–87 (9th Cir. 2013).

10         75.    The AI-generated CSAM of Plaintiffs constitutes the production of child pornography under

11   § 2252A(a)(7) because it involves the morphing, adaption, or modification of the images and videos of real

12   children, retaining their identifiable features to produce sexually explicit content. This production was with

13   the intent of distributing the resulting CSAM to the requesting customer through a licensee application.

14         76.    On information and belief, xAI possessed the CSAM of Plaintiffs on its servers after Grok

15   produced their CSAM and then transported and distributed the unlawful contraband to its customer/user,

16   namely, the perpetrator, using the cut-out or third-party middleman application.

17         77.    xAI advertised the features of Grok that would produce CSAM, namely, the "spicy" or

18   "NSFW" sexual content, knowing that Grok could be used—and was being used—to produce CSAM.

19   **VI.    Plaintiffs Suffered Severe Harm from xAI's Production of their AI-Generated CSAM**

20         **a.    Plaintiff Jane Doe 1**

21         78.    On or about December 6, 2025, Jane Doe 1 received a message from an anonymous

22   Instagram account. When she opened the message, she saw the user had sent her information about "pics" of

23   her which, according to the user, had been generated by a person known to Jane Doe 1 and disseminated

24   over an online platform called Discord. Through a series of messages, the anonymous user went on to

25   explain that the perpetrator had uploaded a folder of image and video files depicting her and other minor

26   females to Discord. The anonymous user decided to alert Jane Doe 1 to the contents of the perpetrator's

27   Discord account after seeing the explicit nature of the files.

28

79.    Eventually, the anonymous user sent Jane Doe 1 a series of AI-generated images and videos which depicted her as well as other minor females. Jane Doe 1 was immediately disturbed by the sexually explicit content. At least five of these files, one video and four images, depicted her actual face and body in settings with which she was familiar, but morphed into sexually explicit poses. The images showed her entire body, including her genitals, without any clothes. The video depicted her undressing until she was entirely nude.

80.    Jane Doe 1 was taken aback at the verisimilitude of the depictions: other than the fact that she knew she had never been in those situations or done those things, she could not visually distinguish these images and video as fake; they resembled real-life content in every way. The images were also produced using photographs of her which she recognized, three of which she knew had been taken when she was still a minor. One of the CSAM images was created using a photograph of her at her school's Homecoming, which was taken on or about September 20, 2025. Another (in addition to the four CSAM images) depicted her topless and appeared to be created using her yearbook photograph, taken on or about June 23, 2025. Jane Doe 1 also recognized the video as using her image from a photograph that Jane Doe 1 had taken with her family on August 3, 2024.

81.    The perpetrator had access to Jane Doe 1's images because he had maintained a close and friendly relationship with Jane Doe 1, taking advantage of Jane Doe 1's trust entice her to send him photographs of herself.

82.    The three images and one video of Jane Doe 1 depicting her completely nude constitute CSAM, pursuant to 18 U.S.C. § 2256(8), because Grok morphed the files to depict the simulated lascivious exhibition of Jane Doe 1's genitals. Jane Doe 1's body was manipulated to produce sexually suggestive content, and posed in an unnatural, i.e. sexual, way given the setting of the original images. The sole purpose behind such morphing was to create sexual content and to elicit a sexual response in the viewer.

83.    Based on the dates that the original images were taken, the production of AI-generated CSAM occurred between in or about July 28, 2025, the date of Imagine's release and December 6, 2025, the date Jane Doe 1 viewed the AI-generated CSAM.

84.    The anonymous Instagram user also sent Jane Doe 1 the AI morphed images of at least two other minor females, whom she recognized, which also appeared to depict sexually explicit content.

85.     The anonymous user then provided Jane Doe 1 with a link to a Discord server, created by the perpetrator, which contained images and videos of at least 18 other minor females, many of whom Jane Doe 1 recognized from her school. The images appeared to have been created from photographs posted on various social media platforms.

86.     Jane Doe 1 began the process of alerting the other minor victims and their families, and ultimately, local law enforcement was contacted, and a criminal investigation was opened. In late December 2025, local police arrested the perpetrator and conducted a search of his phone.

87.     Jane Doe 1 has since learned through the criminal investigation that the perpetrator created other AI-generated material depicting her, including an AI-generated image taken from a photograph of Jane Doe 1 hiking on April 19, 2025.

88.     Jane Doe 1 also learned that the perpetrator uploaded and traded her AI-generated CSAM files on Telegram, a messaging application, and Mega, a file sharing platform. According to the criminal investigator, the perpetrator used her AI-generated CSAM as a bartering tool in Telegram group chats with hundreds of other users, trading her CSAM files for sexually explicit content of other minors.

89.     Jane Doe 1 has suffered severe emotional distress as a result of the production and distribution of her AI-generated CSAM. She feels acute anxiety about who has viewed these files online and feels a complete lack of control over the ongoing dissemination of the files. Her ability to participate in her normal daily activities has been impaired by the resulting anxiety, depression, and stress. She has difficulty eating and sleeping and suffers from recurring nightmares. She lives in fear that the perpetrator may be continuing to generate additional CSAM content using the same xAI tools to morph her images, and that other child predators may be continuing to trade the AI-generated CSAM depicting her online. Attending school has become difficult and anxiety-producing. Jane Doe 1 has had to request academic support and special accommodations, due to the ongoing mental health issues resulting from the harm of her AI-produced CSAM. Jane Doe 1 has further suffered substantial reputational harm, as the AI-generated CSAM was spread among hundreds of users, and it was not clear that the images and video were digitally altered.

**b.     <u>Plaintiff Jane Doe 2</u>**

90.     On or about February 12, 2026, Jane Doe 2 learned through the ongoing criminal investigation that at least two of her images had also been used by the perpetrator to produce AI-generated

- 19 -

CSAM using xAI. Local law enforcement informed Jane Doe 2, a minor, and her mother that these images included one photograph taken of Jane Doe 2 on the beach in a blue bikini which had been morphed to depict her without any clothes. Jane Doe 2 reviewed her Instagram photographs and found a series of images taken on October 12, 2025, depicting her in a blue bikini top in a beach setting.

91.    On information and belief, the AI-generated CSAM image of Jane Doe 2 was produced between on or about October 12, 2025, and late December 2025, when the perpetrator was apprehended by law enforcement.

92.    The images depicting Jane Doe 2 nude constitute CSAM, pursuant to 18 U.S.C. § 2256(8), because Grok morphed the files to depict the simulated lascivious exhibition of Jane Doe 2's genitals. Jane Doe 2's body was manipulated to produce sexually suggestive content, and posed in an unnatural, i.e. sexual, way given the setting of the original images (a public beach). The sole purpose behind such morphing was to create sexual content and to elicit a sexual response in the viewer.

93.    Jane Doe 2's mother also learned from law enforcement that the AI tool used to generate the CSAM was xAI, a generative AI also known as Grok. According to law enforcement, the perpetrator used an application on his phone through which the xAI technology was accessed and used to produce CSAM.

94.    The application the perpetrator used to create the AI CSAM of Plaintiffs relied on Grok's image- and video-producing tools to generate the unlawful content.

95.    On information and belief, this application was a licensee of xAI, or had otherwise purchased its access to Grok, and was used as a cut-out or middleman so that xAI could intentionally and knowingly profit from the sale of access to the Grok model for illicit and unlawful purposes, such as the production of CSAM, all while attempting to shield itself from liability.

96.    On information and belief, any AI-generated image or video using Grok, even when initiated through a middleman application or platform, requires the use of xAI servers, on which Grok is run, to produce the file. xAI has not made Grok' AI model publicly available and has not licensed Grok in its entirety but instead licenses the use of its servers to these middlemen companies, knowing that any illicit and unlawful content generated through prompts to these applications will ultimately be created and distributed from xAI servers.

97.    Jane Doe 2 has suffered severe emotional distress as a result of the production and distribution of her AI-generated CSAM, including acute anxiety. She fears that her classmates and an unknown number of strangers may have already viewed her AI-generated CSAM online. As a result of her anxiety, Jane Doe 2 is unable to sleep to the point of seeking medical intervention. Jane Doe 2 is terrified of retribution for participating in the criminal investigation and is fearful of engaging in her normal daily activities as a result. She has begun self-isolating and avoiding being on her school campus, and even dreads attending her own graduation. What should have been a celebratory final semester of school has turned into a nightmare.

98.    Jane Doe 2 is also terrified that her AI-generated CSAM will impact her college application process, with college admissions officers finding these images of her online and assuming they are real. She has anxiety about how these images may follow her through her college life, including limiting her from participating in campus clubs or social groups who prohibit members from producing sexually explicit content. She feels a complete lack of control over the ongoing dissemination of the AI-generated CSAM images and what this will mean for her life. Jane Doe 2 has also suffered reputational harm, as it is not apparent that the images are digitally altered. Jane Doe 2 further fears for her safety, as the AI-generated CSAM creates a substantial risk that people will discover her real identity and she will become a victim of stalking

c.    **Plaintiff Jane Doe 3**

99.    On or about February 12, 2026, Jane Doe 3 learned through the ongoing criminal investigation that at least one of her images had also been used by the perpetrator to produce AI-generated CSAM.

100.    Local law enforcement informed Jane Doe 3, a minor, and her mother that the AI-generated images found on the perpetrator's phone included one image of Jane Doe 3 which had been morphed to depict her fully nude.

101.    On information and belief, the AI-generated CSAM image of Jane Doe 3 was produced between in or about July 28, 2025, when Grok Imagine was released with the ability to produce sexually explicit content, and late December 2025, when the perpetrator was apprehended by law enforcement.

Case 5:26-cv-02246   Document 1   Filed 03/16/26   Page 25 of 44

102.     The image depicting Jane Doe 3 completely nude constitutes CSAM, pursuant to 18 U.S.C.
§ 2256(8), because the AI tools/Grok morphed the file to depict the simulated lascivious exhibition of Jane
Doe 3's genitals. Jane Doe 3's body was manipulated to produce sexually suggestive content, and posed in
an unnatural, i.e. sexual, way given the setting of the original image. The sole purpose behind such
morphing was to create sexual content and to elicit a sexual response in the viewer.

103.     Jane Doe 3 has experienced severe emotional distress as a result of the production and
dissemination of her AI-generated CSAM. She suffers from constant stress, anxiety, and fear that someone
will see the CSAM and recognize her face. Jane Doe 3 has no idea how many people will be able to access
and view her CSAM online and feels a profound loss of control. Jane Doe 3 has suffered reputational harm
from the production and dissemination of the AI-generated CSAM, as it is not readily apparent that the
images were digitally altered. Jane Doe 3 further fears for her safety, as the AI-generated CSAM creates a
substantial risk that people will discover her real identity and she will become a victim of stalking.

VII.     **Ongoing Harm From the Dissemination of Plaintiffs' CSAM Files**

104.     All three Plaintiffs learned from law enforcement that the digital identification of their AI-
generated CSAM files has been entered into a national database managed by NCMEC. Because Plaintiffs
are now identified victims of known CSAM files, NCMEC will send them notifications every time their
CSAM files are identified as part of any criminal case or investigation. This means that for the rest of
Plaintiffs' lives they will likely receive periodic NCMEC notifications alerting them that criminal
defendants have possessed, received, or distributed CSAM files depicting them, subjecting them to constant
waves of extreme stress and anxiety.

105.     Perhaps even more distressing to Plaintiffs, however, is the trafficking of their CSAM images
that will remain undetected by law enforcement. This trafficking began when the perpetrator traded their AI-
generated CSAM on sites like Discord, Telegram, and Mega. The trading of their CSAM files will now
almost certainly continue as other pedophiles, in turn, use their CSAM files as barter in the dark world of
online CSAM trafficking. Plaintiffs will live every day with the constant anxiety of not knowing whether
someone they encounter has seen this invasive and sexually explicit content created of images of them as
children.

3454568.1

- 22 -

106.    This anxiety is particularly acute at school, since the Plaintiffs do not know whether the anonymous user may be a fellow classmate and whether their CSAM files may have been distributed among others at their school. According to the Discord server Jane Doe 1 reviewed, it also appears the victims' true first names and the name of their school was attached to their files online, meaning other online predators may also be able to identify them, creating a substantial risk for stalking.

## CLASS ALLEGATIONS

107.    This action is brought by Plaintiffs individually and on behalf of the Class, as defined below, pursuant to Rule 23(a), (b)(3) and 23(b)(2), (c)(4), and (g) of the Federal Rules of Civil Procedure:

> All persons in the United States who had real images of themselves as minors altered by xAI/Grok to produce sexualized images or videos with their faces and/or other distinguishing features reasonably identifiable.

108.    The Class consists of at least thousands of minors and thus is so numerous that joinder of all members is impracticable.

109.    The claims asserted by Plaintiffs are typical of the claims of the Class, who also had real images of themselves digitally altered into AI-generated CSAM.

110.    The Plaintiffs will fairly and adequately protect the interests of the Class and do not have any interests antagonistic to those of other Class members.

111.    The Plaintiffs have retained attorneys who are knowledgeable and experienced in survivors' rights and class action matters, as well as complex litigation.

112.    This action is appropriate as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure because common questions of law and fact affecting the Class predominate over those questions giving rise to common answers that move this litigation forward including, but are not limited to:

    a.    Whether xAI was aware of Grok's ability to create and distribute CSAM featuring reasonably indefinable features of real minors;

    b.    Whether xAI was aware of Grok's was being used to create and distribute CSAM featuring reasonably indefinable features of real minors;

    c.    Whether xAI promoted Grok despite knowing it was being used to create and distribute CSAM featuring reasonably indefinable features of real minors;

d.    Whether xAI knowingly distributed Grok-generated CSAM featuring reasonably identifiable features of real minors over the internet;

e.    Whether xAI knowingly processed Grok-generated CSAM featuring reasonably identifiable features of real on its servers;

f.    Whether xAI profited from Grok's ability to create CSAM featuring reasonably indefinable features of real minors;

g.    Whether xAI knowingly profited from an illegal sex trafficking venture targeting minors in violation of 18 U.S.C. § 1591;

h.    Whether xAI owed Plaintiffs and the proposed Class a duty to exercise reasonable care in the design, development, training, deployment, and operation of Grok so as to prevent Grok from being used to create, generate, or distribute CSAM depicting real minors;

i.    Whether xAI breached their duty of undertaking by failing to use reasonable care to prevent the creation and distribution of CSAM depicting real minors; and

j.    Whether xAI could have put additional guardrails in place to prevent Grok's ability to create CSAM featuring reasonably indefinable features of real minors.

113.    In addition, the class device is the superior mechanism for handling this action, and a class trial is eminently manageable.

114.    This action is also appropriate as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure because xAI's decision to eschew industry standard guardrails to prevent the creation and distribution of CSAM affects all class members in the same way, and any injunctive relief awarded will affect the Class as a whole.

115.    Finally, at the very minimum, this action is appropriate using issues classes pursuant to Rule 23(c)(4) because there are multiple common issues relating to xAI's uniform conduct, such as (but not limited to) failing to prevent the creation and distribution of CSAM by Grok, knowingly producing, possessing and distributing CSAM, and xAI's monetizing Grok's ability to create and distribute CSAM.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CAUSES OF ACTION**

**COUNT I**
**Masha's Law: Production with the Intent to Distribute Child Pornography**
**18 U.S.C. §§ 2255(a), 2252A(a)(7)**
**(on behalf of all Plaintiffs and the Class against all Defendants)**

116.    Plaintiffs re-allege and incorporate by reference each preceding and succeeding paragraph as though set forth fully at length herein. The allegations in Count I are made against all Defendants.

117.    Plaintiffs bring this Count individually and on behalf of the other Class Members they seek to represent.

118.    Plaintiffs on behalf of themselves and the Class bring civil claims pursuant to Masha's Law based on Defendants' violation of 18 U.S.C. § 2252A(a)(7), which prohibits the knowing production with intent to distribute, or distribution, by any means, including a computer, in or affecting interstate or foreign commerce, child pornography that is an adapted or modified depiction of an identifiable minor.

119.    Defendants' AI technology produced CSAM, as defined by 18 U.S.C. § 2256(8), using Plaintiffs' and the Class Members' real images, and then distributed the AI-generated CSAM images and videos from xAI servers over the internet, a means of interstate commerce, to customers, including customers paying for this premium feature, and to customers of third-party middlemen licensees. In all instances, the real images and videos uploaded into Defendants' servers were not unlawful CSAM but only became unlawful content after Defendants' AI morphed the files on xAI servers to produce and distribute CSAM.

120.    Plaintiffs and the Class suffered personal injury as a result of Defendants' violation of 18 U.S.C. § 2252A(a)(7).

121.    Title 18 U.S.C. § 2255, entitled "Civil Remedy for Personal Injuries," provides that any person who is a victim of a violation of 18 U.S.C. § 2252A and who suffers personal injury as a result of such violation shall recover the actual damages such person sustains or liquidated damages in the amount of $150,000 per victim, and reasonable attorney's fees.

122.    Plaintiffs and the Class intend to prove actual damages as a result of Defendants' conduct.

123.    At minimum, Plaintiffs intend to seek statutory liquidated damages in the amount of $150,000 per violation against Defendants, as well as the cost of the action, including reasonable attorney's

fees and other litigation costs reasonably incurred, prejudgment and post-judgment interest, and such other relief as the Court deems appropriate, pursuant to both 18 U.S.C. §§ 2255(a) and 2252A(f).

124.    Defendants' conduct, as described above, was intentional, fraudulent, willful, wanton, reckless, malicious, fraudulent, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of its conduct, including to the health, safety, and welfare of Plaintiffs and the Class, and warrants an award of punitive damages in an amount sufficient to punish Defendants and deter others from like conduct.

**COUNT II**
**Masha's Law: Distribution of Child Pornography**
**18 U.S.C. §§ 2255(a), 2252A(a)(2)**
**(on behalf of all Plaintiffs and the Class against all Defendants)**

125.    Plaintiffs re-allege and incorporate by reference each preceding and succeeding paragraph as though set forth fully at length herein. The allegations in Count II are made against all Defendants.

126.    Plaintiffs bring this Count individually and on behalf of the other Class Members they seek to represent.

127.    Plaintiffs on behalf of themselves and the Class bring claims pursuant to Masha's Law based on Defendants' violation of 18 U.S.C. § 2252A(a)(2), which prohibits knowingly distributing any "child pornography" using any means or facility of interstate or foreign commerce or that has been mailed, or has been shipped or transported in or affecting interstate or foreign commerce by any means, including by computer; or any material that contains child pornography using any means or facility of interstate or foreign commerce or that has been mailed, or has been shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

128.    Defendants' AI technology produced CSAM, as defined by 18 U.S.C. § 2256(8), using Plaintiffs' and the Class Members' real images, and then distributed the AI-generated CSAM images and videos from xAI servers over the internet, a means of interstate commerce, to customers, including customers paying for this premium feature, and to customers of third-party middlemen licensees. In all instances, the real images and videos uploaded into Defendants' servers were not unlawful CSAM but only became so after Defendants' AI morphed the files on xAI servers to produce and distribute CSAM.

129.    Plaintiffs and the Class suffered personal injury as a result of Defendants' violation of 18 U.S.C. § 2252A(a)(2).

130.    Plaintiffs and the Class intend to prove actual damages as a result of Defendants' conduct.

131.    At minimum, Plaintiffs intend to seek statutory liquidated damages in the amount of $150,000 per violation against each Defendant, as well as the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred, prejudgment and post-judgment interest, and such other relief as the Court deems appropriate, pursuant to both 18 U.S.C. §§ 2255(a) and 2252A(f).

132.    Defendants' conduct, as described above, was intentional, fraudulent, willful, wanton, reckless, malicious, fraudulent, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of its conduct, including to the health, safety, and welfare of Plaintiffs and the Class, and warrants an award of punitive damages in an amount sufficient to punish Defendants and deter others from like conduct.

<u>**COUNT III**</u>
**Masha's Law: Possession of Child Pornography**
**18 U.S.C. §§ 2255(a), 2252A(a)(5)(B)**
**(on behalf of all Plaintiffs and the Class against all Defendants)**

133.    Plaintiffs re-allege and incorporate by reference each preceding and succeeding paragraph as though set forth fully at length herein. The allegations in Count III are made against all Defendants.

134.    Plaintiffs bring this Count individually and on behalf of the other Class Members they seek to represent.

135.    Plaintiffs on behalf of themselves and the Class bring claims pursuant to Masha's Law based on Defendants' violation of 18 U.S.C. § 2252A(a)(5)(B), which prohibits knowingly possessing any material that contains an image of "child pornography" that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

136.    Defendants' AI technology produced CSAM, as defined by 18 U.S.C. § 2256(8), using Plaintiffs' and the Class Members' real images, generating CSAM using image databases on its servers. The production of this CSAM was in or affecting interstate or foreign commerce by any means, including by

- 27 -

computer. Defendants possessed the resulting AI-generated CSAM on their servers before distributing the AI-generated CSAM images and videos to customers.

137.    Plaintiffs and the Class suffered personal injury as a result of Defendants' violation of 18 U.S.C. § 2252A(a)(5)(B).

138.    Plaintiffs and the Class intend to prove actual damages as a result of Defendants' conduct.

139.    At minimum, Plaintiffs and the Class intend to seek statutory liquidated damages in the amount of $150,000 per violation against each Defendant, as well as the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred, prejudgment and post-judgment interest, and such other relief as the Court deems appropriate, pursuant to both 18 U.S.C. §§ 2255(a) and 2252A(f).

140.    Defendants' conduct, as described above, was intentional, fraudulent, willful, wanton, reckless, malicious, fraudulent, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of its conduct, including to the health, safety, and welfare of Plaintiffs and the Class, and warrants an award of punitive damages in an amount sufficient to punish Defendants and deter others from like conduct.

**COUNT IV**
**Trafficking Victims Protection Act, Beneficiary Liability**
**18 U.S.C. §§ 1595, 1594, 1591(a)(2)**
**(on behalf of all Plaintiffs and the Class against all Defendants)**

141.    Plaintiffs re-allege and incorporate by reference each preceding and succeeding paragraph as though set forth fully at length herein. The allegations in Count IV are made against all Defendants.

142.    Plaintiffs bring this Count individually and on behalf of the other Class Members they seek to represent.

143.    Defendants knowingly and intentionally benefitted, financially and by receiving things of value, from participating in, assisting, supporting, and facilitating, and from conspiring to participate in, assist, support, and facilitate an illegal sex-trafficking venture targeting minors that was in and affecting interstate and foreign commerce, together and with others, in violation of 18 U.S.C. § 1591(a)(2).

144.    Defendants knew, and were in reckless disregard of the fact, that their customers used the channels and instrumentalities of interstate and foreign commerce, to entice, recruit, solicit, harbor, provide,

and obtain minors for purposes of causing commercial sex acts, namely, the production, possession, and distribution of CSAM, as defined by 18 U.S.C. § 2256(8), in violation of 18 U.S.C. § 1591(a)(1).

145.    Defendants and their employees and agents had actual knowledge that they were facilitating a sex trafficking venture to recruit, solicit, entice, coerce, harbor, or obtain Jane Does 1-3, as well as other Members of the Class, into commercial sex acts, namely the production, possession, and distribution of their CSAM, in violation of 18 U.S.C. § 1591(a)(1).

146.    Defendants knew or should have known that they received value for their ongoing business practices that allowed their AI image- and video-making products to become a means of the sex trafficking venture's online child exploitation, namely, the production, possession, and distribution of CSAM, as defined by 18 U.S.C. § 2256(8), despite the risk to children.

147.    Defendants' conduct, as described above, was intentional, fraudulent, willful, wanton, reckless, malicious, fraudulent, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of its conduct, including to the health, safety, and welfare of Plaintiffs and the Class, and warrants an award of punitive damages in an amount sufficient to punish Defendants and deter others from like conduct.

148.    By virtue of these knowing and intentional violations of 18 U.S.C. §§ 1591(a)(2), 1594, 1595, Defendants are liable to Jane Does 1-3 and the other Members of the Class for the damages they sustained and reasonable attorneys' fees.

149.    By virtue of these intentional and outrageous violations of 18 U.S.C. §§ 1591(a)(2), 1594, 1595, Defendants are liable to Jane Does 1-3 and other members of the Class for punitive damages.

**COUNT V**
**California's Statutory Right of Publicity**
**Cal. Civ. Code § 3344**
**(on behalf of all Plaintiffs and the Class against all Defendants)**

150.    Plaintiffs re-allege and incorporate by reference each preceding and succeeding paragraph as though set forth fully at length herein. The allegations in Count V are made against all Defendants.

151.    Plaintiffs bring this Count individually and on behalf of the other Class Members they seek to represent.

3454568.1

152.    California's Right of Publicity Statute, Cal. Civ. Code § 3344, protects minors from the unauthorized appropriation of the minor's identity without prior parental or guardian consent by another for commercial gain. Cal. Civ. Code § 3344(a)(1).

153.    California's Right of Publicity Statute allows recovery of "an amount equal to the greater of seven hundred fifty dollars ($750) or the actual damages suffered by them as a result of the unauthorized use, and any profits from the unauthorized use that are attributable to the use and are not taken into account in computing the actual damages." Cal. Civ. Code § 3344(a)(1).

154.    Defendants knowingly used Plaintiffs' and Class members' likenesses to advertise, sell, or solicit paid subscriptions to Grok.

155.    Defendants did not—nor could not—obtain Plaintiffs' or Class members' parents or guardians' consent to use their likenesses for the proliferation of CSAM featuring reasonably identifiable minors.

156.    Plaintiffs and Class members were harmed by Defendants' use of their likenesses. As a result of Defendants' conduct, Plaintiff and Class members have severe emotional distress, harassment, loss of privacy, and are at substantial risk of future harm, including stalking.

157.    Defendants' actions were a substantial factor in causing Plaintiff and Class members' harm.

158.    The creation of CSAM was not used in conjunction with news, public affairs, a sports broadcast or account, or a political campaign, and was patently illegal given the content.

**<u>COUNT VI</u>**
**California's Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code § 17200, *et seq.***
**(on behalf of all Plaintiffs and the Class against all Defendants)**

159.    Plaintiffs re-allege and incorporate by reference each preceding and succeeding paragraph as though set forth fully at length herein. The allegations in Count VI are made against all Defendants.

160.    Plaintiffs bring this claim on behalf of themselves and the members of the proposed Class against Defendants for violations of California's UCL, Cal. Bus. & Prof. Code § 17200, *et seq.*

161.    The UCL prohibits any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising" Cal. Bus. & Prof. Code § 17200.

162.    Defendants have committed, and continue to commit, acts of unlawful business practices by violating the following statutes, as alleged more fully herein:

a.    18 U.S.C. § 2252A(a)(7), by knowingly producing, with intent to distribute, CSAM featuring identifiable minors, including Plaintiffs, using Grok, as alleged in Count I;

b.    18 U.S.C. § 2252A(a)(2), by knowingly distributing AI-generated CSAM from xAI servers over the internet, a means of interstate commerce, to paying customers and customers of third-party middlemen licensees, as alleged in Count II;

c.    18 U.S.C. § 2252A(a)(5)(B), by knowingly possessing AI-generated CSAM on xAI servers after Grok produced such material and before distributing it to customers, as alleged in Count III; and

d.    18 U.S.C. §§ 1591(a)(2), 1594, and 1595, by knowingly and intentionally benefitting, financially, from participating in, assisting, supporting, and facilitating a sex-trafficking venture targeting minors, as alleged in Count IV.

163.    Each of the foregoing statutory violations constitutes an independent predicate "unlawful" act within the meaning of Cal. Bus. & Prof. Code § 17200.

164.    Defendants' conduct, as alleged herein, is unfair because the harm it causes to Plaintiffs, the Class, and the general public substantially outweighs any utility or benefit derived from that conduct

165.    Defendants deliberately designed, developed, and released Grok without implementing industry-standard safeguards to prevent the creation and dissemination of CSAM featuring reasonably identifiable minors.

166.    The gravity of the harm inflicted by Defendants' practices vastly outweighs any purported benefit of Defendants' "spicy mode" or other uncensored content features. No legitimate business interest is served by designing an AI image-generation tool to produce CSAM.

167.    Defendants' violations of the UCL, through its unlawful and unfair business practices, are ongoing and present a continuing threat that Grok will continue to create and/or disseminate CSAM featuring reasonably identifiable minors. Plaintiffs and Class members have severe emotional distress, harassment, loss of privacy, and are at substantial risk of future harm, including stalking.

3454568.1

1    168.    Pursuant to the UCL, Plaintiffs and Class members are entitled to preliminary and permanent

2    injunctive relief enjoining Defendants from further engaging in this unfair competition, as well as

3    disgorgement to Plaintiff and the proposed Class of all of Defendants' revenues that were wrongfully

4    obtained from them as a result of its unfair competition, or such portion of those revenues as the Court may

5    find equitable.

6                                   **COUNT VII**
                          **Strict Liability – Design Defect**
7           **(on behalf of all Plaintiffs and the Class against all Defendants)**

8    169.    Plaintiffs re-allege and incorporate by reference each preceding and succeeding paragraph as

9    though set forth fully at length herein. The allegations in Count VII are made against all Defendants.

10    170.    Plaintiffs bring this Count individually and on behalf of the other Class Members they seek

11    to represent.

12    171.    At all relevant times, Defendants designed, developed, managed, operated, tested, produced,

13    labeled, marketed, advertised, promoted, controlled, sold, supplied, distributed, and benefitted from Grok's

14    creation of AI-generated CSAM of the Plaintiffs and the proposed class.

15    172.    Defendants' Grok is designed and intended to be generative AI photo-and-image-generation

16    tools.

17    173.    Defendants' Grok is distributed and sold to the public through retail channels (i.e., the Apple

18    App "Store" and the Google Play "Store") and through paid subscriptions.

19    174.    Defendants' Grok is marketed and advertised to the public for the personal use of the end-

20    user.

21    175.    Defendants' defectively designed Grok to allow users to create AI-generated CSAM

22    depicting real minors.

23    176.    The defects in the design of the Defendants' Grok existed prior to the release of Grok to the

24    public, and there was no substantial change to any of the Defendants' Grok between the time of their upload

25    by each Defendant to public or retail channels (e.g., the App Store or Google Play) and the time of their

26    distribution.

27    177.    The users who created the AI-generated CSAM of Plaintiffs and the proposed class used

28    Grok as intended.

178.    Defendants failed to test the safety of the features it developed and implemented for use on Grok to prevent AI-generated CSAM.

179.    Defendants' Grok is defective in design and pose a substantial likelihood of harm for the reasons set forth herein, because Grok fails to meet the safety expectations when used in an intended or reasonably foreseeable manner. Defendant markets, promotes, and advertises Grok as capable of creating "spicy" and "NSFW" content.

180.    Alternative designs were available that would reduce the output of AI-generated CSAM.

181.    The emotional and economic injuries of Plaintiffs and the proposed class were reasonably foreseeable to Defendants at the time of Grok's development, design, advertising, marketing, promotion, and distribution.

182.    Plaintiffs and the proposed class were injured as a direct and proximate result of the Defendants' defective designs as described herein. The defective design of Grok was a substantial factor in causing harms to Plaintiffs and the proposed class.

183.    Defendants' conduct, as described above, was intentional, fraudulent, willful, wanton, reckless, malicious, fraudulent, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of its conduct, including to the health, safety, and welfare of Plaintiffs and the Class, and warrants an award of punitive damages in an amount sufficient to punish Defendants and deter others from like conduct.

**<u>COUNT VIII</u>**
**Negligence – Design Defect**
**(on behalf of all Plaintiffs and the Class against all Defendants)**

184.    Plaintiffs re-allege and incorporate by reference each preceding and succeeding paragraph as though set forth fully at length herein. The allegations in Count VIII are made against all Defendants.

185.    Plaintiffs bring this Count individually and on behalf of the other Class Members they seek to represent.

186.    At all relevant times, Defendants designed, developed, managed, operated, tested, produced, labeled, marketed, advertised, promoted, controlled, sold, supplied, distributed, and benefitted from Grok's creation of AI-generated CSAM of the Plaintiffs and the proposed class.

3454568.1

187.    Defendants' Grok is designed and intended to be a generative AI photo-and-image-generation tool.

188.    Defendants knew, or by the exercise of reasonable care, should have known that Grok posed risks of creating AI-generated CSAM featuring real minors.

189.    Defendants owed Plaintiffs and the proposed Class a duty to exercise reasonable care in the design, development, training, deployment, and operation of Grok so as to prevent Grok from being used to create, generate, or distribute child sexual abuse material ("CSAM") depicting real minors.

190.    Defendants knew that users could use Grok to create AI-generated CSAM featuring real minors' faces.

191.    Defendants breached their duty by failing to use reasonable care in the design of Grok by negligently designing it to allow for the creation of AI-generated CSAM.

192.    A reasonable company under the same or similar circumstances as each Defendant would have designed a safer product.

193.    The emotional and economic injuries of Plaintiffs and the proposed class were reasonably foreseeable to Defendants at the time of Grok's development, design, advertising, marketing, promotion, and distribution.

194.    As a direct and proximate result of Defendants' Grok's defective design, Plaintiffs suffered serious injuries.

195.    Defendants' conduct, as described above, was intentional, fraudulent, willful, wanton, reckless, malicious, fraudulent, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of its conduct, including to the health, safety, and welfare of Plaintiffs and the Class, and warrants an award of punitive damages in an amount sufficient to punish Defendants and deter others from like conduct.

## COUNT IX
### Negligent Undertaking
### (on behalf of all Plaintiffs and the Class against all Defendants)

196.    Plaintiffs re-allege and incorporate by reference each preceding and succeeding paragraph as though set forth fully at length herein. The allegations in Count IX are made against all Defendants.

3454568.1

197.   Plaintiffs bring this Count individually and on behalf of the other Class Members they seek to represent.

198.   Defendants created Grok to generate sexually explicit content.

199.   Defendants should have recognized that effective safety measures were needed to the prevention of creation and distribution of AI-generated CSAM depicting real minors, as occurred with Plaintiffs and the proposed class.

200.   Defendants could have avoided Plaintiffs' injuries with minimal cost, including, for example, incorporating safety features to prevent the creation and distribution of AI-generated CSAM depicting real minors.

201.   Imposing a duty on Defendants would benefit the community at large.

202.   Imposing a duty on Defendants would not be burdensome to them because they have the technological and financial means to avoid the risks of harm to Plaintiffs and the proposed class.

203.   Plaintiffs reasonably relied on Defendants exercising reasonable care in undertaking to prevent the creation and distribution of AI-generated CSAM depicting real minors.

204.   Defendants breached their duty of undertaking by failing to use reasonable care to prevent the creation and distribution of AI-generated CSAM depicting real minors.

205.   Defendants' failure to exercise reasonable care increased the risk of, and was a substantial factor in causing, harm to Plaintiffs and the proposed class.

206.   The conduct of Defendants, as described above, was intentional, fraudulent, willful, wanton, reckless, malicious, fraudulent, oppressive, extreme, and outrageous, and displayed a conscious and depraved indifference to the consequences of its conduct, including to the health, safety, and welfare of minors.

## COUNT X
### Negligence Per Se
### (on behalf of all Plaintiffs and the Class against all Defendants)

207.   Plaintiffs re-allege and incorporate by reference each preceding and succeeding paragraph as though set forth fully at length herein. The allegations in Count X are made against all Defendants.

208.   Plaintiffs bring this Count individually and on behalf of the other Class Members they seek to represent.

3454568.1

209.    At all times, Defendants had an obligation to comply with applicable statutes and regulations, including but not limited the PROTECT Our Children Act (*see* 18 U.S.C. § 2258A), as well as other federal laws.

210.    Defendants owed a heighted duty of care to ensure that their safety procedures were effective and would prevent the creation and distribution of AI-generated CSAM depicting real minors.

211.    Defendants failed to meet the requirements of 18 U.S.C. § 2258A by not reporting to NCMEC the violations of child pornography laws that they suspected to be in existence within Grok.

212.    Plaintiffs and the proposed class are within the class of persons that this statute is intended to protect.

213.    Plaintiffs injuries are the type of harm that this statute is intended to prevent.

214.    Violations of the foregoing statute constitutes negligence *per se*.

215.    As a direct and proximate result of Defendants' statutory violations, Plaintiffs suffered serious injuries, including but not limited to emotional distress, reputation harm, and pain and suffering.

216.    The conduct of Defendants, as described above, was intentional, fraudulent, willful, wanton, reckless, malicious, fraudulent, oppressive, extreme, and outrageous, and displayed a conscious and depraved indifference to the consequences of its conduct, including to the health, safety, and welfare of minors.

## **COUNT XI**
### **Negligent Infliction of Emotional Distress**
### **(on behalf of all Plaintiffs and the Class against all Defendants)**

217.    Plaintiffs re-allege and incorporate by reference each preceding and succeeding paragraph as though set forth fully at length herein. The allegations in Count XI are made against all Defendants.

218.    Plaintiffs bring this Count individually and on behalf of the other Class Members they seek to represent.

219.    At all relevant times, Defendants owed Plaintiffs and the proposed class a duty to exercise reasonable care in the design, development, training, deployment, and operation of their generative AI models so as to prevent Grok from being used to create, generate, or distribute child sexual abuse material ("CSAM") depicting real minors.

220.    This duty arose from the foreseeable risk that Defendants' generative AI technology, which was specifically designed and marketed to produce photorealistic imagery from text-based prompts and to engage in "digital undressing," would be used to generate sexually explicit depictions of real minors.

221.    Defendants were on actual and constructive notice of this risk because, among other things: (i) Defendants deliberately designed and marketed Grok's capability to produce "spicy" and uncensored content, including nudity; (ii) Defendants' own system prompts instructed the model to "assume good intent" when receiving prompts referencing "teenagers" and "girls" and imposed "no restrictions" on fictional adult content with dark or violent themes; and (iii) Defendants received multiple direct reports that Grok was being used to digitally alter photographs of real minors into sexually explicit images, yet failed to take adequate remedial action.

222.    Defendants breached their duty of care by, among other acts and omissions: (i) designing and releasing Grok and Grok Imagine without adequate safeguards to prevent the generation of CSAM; (ii) marketing and promoting the ability of Grok to produce sexualized and "NSFW" content, including through public demonstrations by Defendants' principal, Elon Musk; (iii) failing to implement or enforce content-moderation policies sufficient to detect and prevent the generation and distribution of CSAM; and (iv) continuing to profit from Grok's capabilities by placing image-generation features behind a paid subscription rather than disabling the functionality that enabled the creation of CSAM.

223.    Plaintiffs and the proposed class were direct victims of Defendants' negligent conduct. Defendants duty ran to Plaintiffs and the proposed class as the foreseeable subjects of AI-generated CSAM produced by Grok. Plaintiffs' real photographs were ingested by Defendants' technology and morphed into sexually explicit depictions without their knowledge or consent.

As a direct and proximate result of Defendants' negligent conduct, Plaintiffs have suffered severe emotional distress.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**COUNT XII**
**Intentional Infliction of Emotional Distress**
**(on behalf of all Plaintiffs and the Class against all Defendants)**

224.    Plaintiffs re-allege and incorporate by reference each preceding and succeeding paragraph as though set forth fully at length herein. The allegations in Count XII are made against all Defendants.

225.    Defendants engaged in extreme and outrageous conduct by (1) failing to implement safeguards to prevent the creation of CSAM where Plaintiffs' and Class Members are reasonably identifiable; (2) creating a process that permits Grok to create CSAM where real minors are reasonably identifiable; (3) creating a process whereby Grok disseminates CSAM where real minors are reasonably identifiable; and (4) failing to design Grok to delete its own X posts with CSAM where real minors are reasonably identifiable. This extreme and outrageous conduct is beyond all bounds of decency.

226.    Defendants intended to cause, or disregarded a substantial probability of causing, severe emotional distress to individuals who are depicted CSAM where they are reasonably identifiable.

227.    Defendants caused Plaintiffs and Class members severe emotional distress. Because of Defendants' conduct, Plaintiffs and Class members have severe emotional distress, harassment, loss of privacy, and are at substantial risk of future harm, including stalking.

**COUNT XIII**
**Public Nuisance**
**(on behalf of all Plaintiffs and the Class against all Defendants)**

228.    Plaintiffs re-allege and incorporate by reference each preceding and succeeding paragraph as though set forth fully at length herein. The allegations in Count XIII are made against all Defendants

229.    Plaintiffs bring this Count individually and on behalf of the other Class Members they seek to represent.

230.    A public nuisance "an unreasonable interference with a right common to the general public," and "[c]ircumstances that may sustain a holding that an interference with a public right is unreasonable include" conduct which "involves a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience;" conduct "proscribed by a statute, ordinance or administrative regulation;" or conduct "of a continuing nature or has produced a permanent or long-lasting effect, and, as the actor knows or has reason to know, has a significant effect upon the public right." Restatement (Second) of Torts § 821B (1979).

3454568.1

231.    xAI has significantly interfered with the public peace, comfort, and convenience by permitting Grok to create and disseminate of AI-generated CSAM featuring reasonably identifying minors by Grok, as the public has a right to be free from such patently illegal images.

232.    xAI has also unreasonably interfered with a right common to the public by creating and disseminating AI-generated CSAM featuring reasonably identifying minors, as it is proscribed by federal statutes, namely 18 U.S.C. § 2252A(a)(2), (5)(B) and 18 U.S.C. §§ 1591(a)(2), 1594, and 1595.

233.    xAI has further unreasonably interfered with a right common to the public by creating and disseminating AI-generated CSAM featuring reasonably identifying minors on the internet, creating permanent and long-lasting effects as these images will continue to spread and proliferate.

234.    The societal harm caused by xAI's generative AI CSAM includes normalization and desensitization, creating a gateway to child sex abuse offending, and corruption of youth.[39]

235.    Normalization and Desensitization: AI CSAM risks lowering psychological and social barriers to more extreme content. By normalizing child sexual exploitation, it can degrade users' moral and emotional inhibitions, reinforcing distorted beliefs and reducing perceived harm. In other words, in a world where creation and distribution of this kind of content is accepted as "normal" – by, for example, a major corporation building its business model around this sexualized content  with the corporation's CEO making it into a "trend" online as if it were a joke, society becomes desensitized to the severe and ongoing harm the content actually causes, to victims whose photos are used to generate such content, and to society at large, in terms of respect for the privacy and dignity of all persons.

236.    Gateway to Child Sex Abuse Offending: AI CSAM can serve as a behavioral bridge into offending through two mechanisms: (1) Escalation, where individuals progress from legal adult content to CSAM as tolerance builds toward more extreme material; and (2) Inhibition erosion, where individuals with a sexual interest in children, who might otherwise avoid offending, are drawn in by the perceived safety, legality, or personalization of AI-generated content. Both processes may be reinforced by online

---

[39] Caoilte Ó Ciardha, John Buckley, Rebecca S. Portnoff, "AI Generated Child Sexual Abuse Material -- What's the Harm?" Cornell University, Computer Science, Computers and Society; https://arxiv.org/abs/2510.02978 (October 3, 2025).

communities (such as the Discord trading posts Plaintiffs' perpetrator used) that normalize or encourage continued engagement.

237.    <u>Corruption of Youth</u>: Adolescents are using AI tools to generate explicit images of peers, often without understanding the full consequences. This creates risks of coercion, abuse, and long-term psychological harm, while also implicating minors in digital sexual exploitation.

238.    Defendants knew, or should have known, that the design and promotion of Grok without the appropriate guardrails to prevent the creation and dissemination of AI-generated CSAM featuring reasonably identifying minors would create a public nuisance.

239.    As well as harming the public by creating and disseminating AI-generated CSAM featuring reasonably identifying minors, Grok has particularly injured Plaintiffs and Class Members who are depicted in these illegal images.

## **PRAYER**

WHEREFORE, Plaintiffs, on behalf of themselves and the other members of the Class, request that this Court award relief  against Defendants as follows:

1.    An order certifying the Class and designating Plaintiffs as Class Representatives and their counsel as Class Counsel;

2.    Awarding Plaintiffs and the proposed Class statutory damages or actual damages at their election, restitution, disgorgement, attorneys' fees and costs, and any other relief that may be permitted by law or equity pursuant to the claims for relief;

3.    Permanently enjoining xAI from engaging in the illegal conduct alleged herein;

4.    Awarding Plaintiffs and the proposed Class pre-judgment and post-judgment interest pursuant to the claims for relief;

5.    Awarding Plaintiffs and the proposed Class costs, expenses, and attorneys' fees as permitted by law; and

6.    Awarding Plaintiffs and the proposed Class further relief as the Court may deem just and proper under the circumstances.

3454568.1

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a jury trial for all claims so triable.

Dated:  March 16, 2026                                  Respectfully submitted,


By: /s/ Vanessa Baehr-Jones
Vanessa Baehr-Jones

Annika K. Martin (*pro hac vice forthcoming*)
**LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP**
akmartin@lchb.com
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone:  212.355.9500

Mark P. Chalos (*pro hac vice forthcoming*)
Betsy A. Sugar (*pro hac vice forthcoming*)
**LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP**
mchalos@lchb.com
bsugar@lchb.com
222 2nd Ave. S., Suite 1640
Nashville, TN 37201
Telephone:  615.313.9000

Michelle A. Lamy (SBN 308174)
**LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP**
mlamy@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone:  (415) 956-1000

Vanessa Baehr-Jones (SBN 281715)
**BAEHR-JONES LAW PC**
vanessa@advocatesforsurvivors.com
4200 Park Boulevard, No. 413
Oakland, CA 94602
Telephone:  510.500.9634

*Attorneys for Plaintiffs and the proposed Class*

3454568.1