Annika K. Martin (*pro hac vice*)
LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP
akmartin@lchb.com
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: 212.355.9500

Elizabeth J. Cabraser (SBN 83151)
Michelle A. Lamy (SBN 308174)
LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP
ecabraser@lchb.com
mlamy@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: 415.956.1000

Mark P. Chalos (*pro hac vice*)
Betsy A. Sugar (*pro hac vice*)
LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP
mchalos@lchb.com
bsugar@lchb.com
222 2nd Ave. S., Suite 1640
Nashville, TN 37201
Telephone: 615.313.9000

Vanessa Baehr-Jones (SBN 281715)
BAEHR-JONES LAW PC
vanessa@advocatesforsurvivors.com
4200 Park Boulevard, No. 413
Oakland, CA 94602
Telephone: 510.500.9634

Attorneys for Plaintiffs and the Proposed Classes

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| JANE DOE 1, et al.<br><br>Plaintiffs,<br><br>v.<br><br>XAI CORP. et al.,<br><br>Defendants. | Case No. 5:26-cv-2246-PCP<br><br>**REPLY IN SUPPORT OF MOTION FOR ORDER DIRECTING PRESERVATION OF EVIDENCE** |

## I. INTRODUCTION

Plaintiffs did not bring this motion lightly or based on any misunderstanding. They did so only after Elon Musk publicly stated—without qualification—that "all user data that was uploaded to SpaceXAI[1] before now will be completely and utterly deleted," and "[z]ero anything whatsoever will remain." Dkt. 49-1 (Martin Decl.), Ex. A. And they did so only after xAI refused—not once, but twice—to confirm appropriate steps had been taken to ensure that, notwithstanding Mr. Musk's statement, evidence potentially relevant to this matter is not actively being destroyed.

xAI's terse responses to both of Plaintiffs' detailed letters on this topic only heightened Plaintiffs' concern, as they merely affirmed Mr. Musk's apparent belief that he may unilaterally direct the destruction of *entire xAI databases* notwithstanding this litigation and the preservation obligations it imposes. *See* Martin Decl., Exs. B-E. xAI's opposition likewise does not resolve the problem. The opposition is predicated entirely upon two assumptions: that the "context" of Mr. Musk's statement makes clear his destruction was limited to "Grok Build," and that *every single document and communication* associated with Grok Build is necessarily irrelevant to this case. Neither assumption is substantiated: Mr. Musk's instruction to delete "all user data" is plainly not limited to Grok Build, and the Grok Build coding agent may in fact be used to create applications that generate sexualized content, including Child Sexual Abuse Material (CSAM). Regardless, xAI still has not confirmed the company is preserving the material evidence identified in Plaintiffs' letters.[2] Even more problematically, xAI's counsel still refuses to affirm whether they have corrected (or potentially share) Mr. Musk's view that he is free to unilaterally determine what is relevant to this case and to indiscriminately destroy anything he believes is not. Instead, xAI submits only a declaration from counsel containing *their interpretation* of Mr. Musk's statement and stating xAI belatedly issued a litigation hold to "relevant employees" (unclear who) to preserve evidence "relevant to the litigation"

---

[1] X.AI Corp. is now known as SpaceXAI Corp. *See* Dkt. 59 (xAI Corporate Disclosure Statement).

[2] This included, without limitation: "communications (e.g., emails, text messages, instant messages, Slack messages, internal messaging platform messages), metadata, databases, cloud-stored information, user account records, user prompts, platform activity logs, access records, audit trails, analytics data, audio and video recordings, photographs, hard-copy documents, and any reports, referrals, notifications, or disclosures made to law enforcement, the National Center for Missing & Exploited Children (NCMEC), or any other governmental, regulatory, or third-party entity concerning potentially unlawful, abusive, or otherwise improper activity on your client's platform, together with all supporting information, underlying data, communications, analyses, and materials relating to such reports or disclosures." Martin Decl., Ex. B.

(unclear what). Dkt. 58-1 (Kurtzberg Decl.) ¶¶ 3–9.

Given this factual record, it is imperative the Court grant Plaintiffs' motion for a preservation order. It is undisputed that undirected document destruction is ongoing at xAI. As set forth below, xAI alone possesses the evidence necessary to identify the class of victims whose images as minors were morphed by Grok to generate CSAM. If xAI destroys that evidence, xAI could deprive potentially thousands of proposed class members the chance to prove their claims. Given the stakes, a Court order is necessary to prevent destruction of the materials set forth in Plaintiffs' Proposed Order. Dkt. 49-2. And there is nothing procedurally deficient about Plaintiffs' preservation request: Plaintiffs first attempted to resolve this issue with xAI directly and, in any event, the procedural rules xAI now cites concern motions to compel production that have no bearing on this request for preservation. Plaintiffs thus respectfully reiterate their request that the Court issue a preservation order.

## II. <u>ARGUMENT</u>

### A. <u>All Factors Weigh in Favor of a Preservation Order Where Deletion of User Data Could Deny Justice for the Proposed Classes.</u>

In its opposition, xAI fails to counter Plaintiffs' arguments regarding the three factors courts consider in issuing a preservation order. *See Cordova v. Huneault*, No. 25-CV-04685-VKD, 2025 WL 1745762, at *1 (N.D. Cal. June 23, 2025) (setting forth that courts consider: (1) the court's concern for "existence and maintenance of integrity of the evidence," (2) "any irreparable harm likely to result," and (3) the preserving party's "capability"). All three factors still favor entry of a preservation order here.

First, xAI does not provide any evidence to contradict Musk's unequivocal post on July 13, 2026, that xAI was deleting "all user data that was uploaded to SpaceXAI before now" such that "[z]ero anything whatsoever will remain." Martin Decl., Ex. A. xAI's insistence—first in an email to Plaintiffs and now to the Court—that Plaintiffs simply misunderstand the "context" of Mr. Musk's statement is not evidence of what documents were or were not destroyed in response to Mr. Musk's directive. *See* Martin Decl., Ex. E; Dkt. 58 (Opp'n) at 2. Notably, xAI's counsel's declaration includes no statement denying that Mr. Musk directed destruction of "all user data," and no information about how those charged with executing Mr. Musk's directive understood it. *Cf. Echostar Satellite LLC v. Freetech, Inc.*, No. C 07-06124 JW, 2009 WL 8399038, at *2 (N.D. Cal. Jan. 22, 2009) (denying plaintiff's motion to preserve evidence where defense

counsel's declaration (Dkt. 81-1) included a statement that the company was not deleting evidence and attached discovery responses certified by a company representative).

Nor should the Court credit xAI's unilateral determination that *everything* associated with Grok Build is *necessarily* irrelevant to this litigation and can therefore be destroyed. Opp'n at 2. Grok Build operates using the same underlying Grok model at issue in this litigation, and it is certainly possible that Grok Build could be used to generate CSAM. At a minimum, xAI should preserve potentially relevant Grok Build data rather than destroy *all of it* while the contours of discovery are still developing in this nascent litigation.

None of xAI's authorities undercut the concerns detailed by Plaintiffs here. None involved a public statement from the defendant's CEO that the company was actively destroying evidence, and two concerned motions for preliminary injunction, which carry a different legal standard. *See* Opp'n at 7-8 (citing *Kafeel v. Apple Inc.*, No. 26-CV-00330-RFL, 2026 WL 892016, at *1 (N.D. Cal. Apr. 1, 2026) (denying motion for preliminary injunction where pro se litigant submitted "limited evidence" of a risk of spoliation); *Smythe v. OpenAI, Inc.*, No. 25-CV-08296-TLT, 2025 WL 3526821, at *4 (N.D. Cal. Dec. 9, 2025) (denying motion for preliminary injunction where plaintiff was unlikely to succeed on the merits and had "not made any showing that Defendant is likely to violate their [preservation] duties"); *Young v. Facebook, Inc.*, No. 5:10-CV-03579-JF-PVT, 2010 WL 3564847, at *1 (N.D. Cal. Sept. 13, 2010) (denying motion for preservation of evidence absent "showing that there is reason for the court to be concerned that potentially relevant evidence is not being preserved")). Thus, "the level of concern . . . for the continuing existence and maintenance of the integrity of the evidence" remains high and weighs in favor of issuing a preservation order here. *Cordova*, 2025 WL 1745762, at *1.

Second, xAI does not and cannot contest that irreparable harm would result from destruction of relevant evidence in this matter. As just one example: if xAI deletes the user data underpinning xAI's reports to NCMEC and law enforcement, there is no way for that data to be recreated elsewhere because NCMEC does not store identifying information of victims. Baehr-Jones Decl. ¶ 3. Thus, to identify the victims of Grok-generated CSAM here, Plaintiffs will require evidence in xAI's sole possession, namely the details underpinning those reports to NCMEC, including the user data and related materials. *See Doe v. MG Freesites, LTD*, 707 F. Supp. 3d 1157, 1171 (N.D. Ala. 2023) (explaining that "for class certification

purposes, the CSAM content documented in Defendants' own records shows who the class members are," and granting class certification for CSAM class). That is why Plaintiffs' correspondence to xAI on this issue repeatedly requested confirmation that xAI was preserving the user data underlying its reports of CSAM to NCMEC and law enforcement—confirmation xAI repeatedly refuses (even now) to provide in writing. *See* Martin Decl. Exs. B, D; Opp'n at 3-5.

Finally, as to the third factor, it is far from clear that xAI can be trusted to maintain all relevant evidence here. xAI still refuses to provide any evidence as to its preservation efforts, and in the meantime, Mr. Musk is proceeding with wholesale deletion of xAI user data. Plaintiffs cannot reasonably be expected to trust unilateral determinations by Mr. Musk (to whom xAI has not even affirmed any litigation hold was delivered) regarding what evidence may be relevant to this litigation. Relevance determinations in pending litigation are not for a party—or its CEO—to prejudge before any discovery has even been served. This is precisely why preservation obligations are broad. *See, e.g., Forrest v. Meta Platforms, Inc.*, No. 22-CV-03699-PCP, 2026 WL 2296683, at *4 (N.D. Cal. Aug. 10, 2026) ("[A] party must preserve evidence it knows or *should know* is relevant to any party's claim or *defense*. So the duty is triggered whenever it becomes objectively 'reasonably foreseeable' that evidence will be relevant in the litigation.") (internal citation omitted) (emphasis in original).

Moreover, while companies have an obligation to preserve CSAM and its associated data for one year following a report to NCMEC, *see* 18 U.S.C. § 2259A(h)(1), this provision only applies to CSAM a provider actually reports. Here, Plaintiffs allege xAI failed to report thousands of AI-generated CSAM images depicting Jane Doe 4 as a minor. Dkt. 26 (Amended Compl.) ¶ 171. Plaintiffs therefore have little confidence that xAI has been meeting its statutory CSAM reporting requirements, let alone its one-year preservation requirements. Due to the complexity of preserving CSAM evidence (which is contraband) in accordance with the relevant federal laws, the parties in other complex class cases involving a defendant's possession of CSAM have engaged in extensive negotiations regarding protocols for handling this evidence and courts have issued orders regarding CSAM preservation. *See, e.g.*, *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, No. 22-MD-03047-YGR (PHK), 2024 WL 3498235 (N.D. Cal. July 19, 2024); *Doe #1 v. MG Freesites, LTD*, No. 7:21-CV-00220-LSC, 2023 WL 5313081, at *3 (N.D. Ala. Aug. 17, 2023) (granting in part plaintiff's proposed CSAM protocol). xAI's counsel's bald assertion that its

litigation hold "covers all relevant evidence in this case" is simply not enough in this context. Opp'n at 10.

Accordingly, serious concerns remain that xAI is not maintaining and preserving critical categories of evidence and that the destruction of such evidence would irreparably harm proposed class members.

**B. <u>Plaintiffs' Request Is Urgent and Satisfies All Applicable Rules.</u>**

By their plain terms, the meet and confer requirements in Federal Rule of Civil Procedure 37 and Local Civil Rule 37-1 do not apply to this motion, and xAI cites zero authority supporting its argument that they do. That omission is telling. In any event, Plaintiffs *did* confer with xAI before bringing this motion—over four letters spanning several weeks—and filed only after xAI refused multiple requests to provide a clear answer regarding its preservation of key evidence.

Rule 37 defines its scope, requiring parties to meet and confer prior to a motion for an order "compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). Plaintiffs seek neither here. Similarly, Local Civil Rule 37-1 concerns motions "to resolve a disclosure or discovery dispute." Again, Plaintiffs' motion concerns not a dispute about what discovery should be produced—as discovery has yet even to be served in this action—but a request for the entry of an order to preserve evidence. Thus, Plaintiffs violated neither Rule in bringing this motion.

In any event, Plaintiffs engaged in extensive, good faith written exchanges with xAI on this topic, spanning a period of several weeks. *See* Martin Decl., Exs. B-E. After xAI blithely dismissed Plaintiffs' first detailed letter with a three-sentence email asserting only that xAI had "taken appropriate steps to preserve any potentially relevant evidence," *id.*, Ex. C, Plaintiffs responded with another detailed letter requesting that xAI "identify: (1) what steps (if any) the xAI Defendants have taken to preserve materials in connection with this matter; and (2) what categories of materials described in the July 20 letter you contend need not be preserved," *id.*, Ex. D. xAI did neither in response, and instead simply asserted again that it had "taken appropriate steps to preserve any potentially relevant evidence." *Id.*, Ex. E. Plaintiffs filed as quickly as possible thereafter, out of a growing concern that xAI was unwilling to appropriately address ongoing document destruction within the company.

The fact that the parties did not discuss this issue by phone has no bearing on whether the relief requested here is appropriate. Existence of a phone conference is not among the three factors relevant to issuance of a preservation order. *See supra* Section II.A. xAI cites only one case for its argument that the

Court should decline to rule on the merits of this motion because the parties conferred in writing instead of telephonically. Opp'n at 6. It is inapposite. There, a pro se plaintiff brought motions for an injunction, discovery, and to be appointed counsel, including a request for the court to transfer him to another prison, all without engaging in *any* meet and confer process, telephonic or written. *Bahena v. Ramirez*, No. 22-CV-03039-PCP, 2024 WL 3522054, at *1 (N.D. Cal. July 23, 2024). The court explained that, as to the discovery motions governed by Rule 37, "the moving party must actually perform the obligation to confer or attempt to confer in good faith to resolve the discovery dispute without court intervention." *Id.* at *2. Here, before filing, Plaintiffs engaged in a good faith attempt to resolve the issue of evidence preservation with xAI, exchanging multiple letters over several weeks. xAI refused. And xAI is wrong that further conversation would have cleared up any "misunderstanding" on Plaintiffs' part. Opp'n at 6. As detailed above, nothing in xAI's opposition or in xAI's counsel's declaration addresses any of Plaintiffs' concerns.

## III. <u>CONCLUSION</u>

For the reasons set forth above and in Plaintiffs' motion, Plaintiffs respectfully request that the Court grant the motion and order xAI to preserve the categories of evidence detailed in Plaintiffs' Proposed Order.

Dated: September 24, 2026

Respectfully submitted,

By: */s/ Vanessa Baehr-Jones*
Vanessa Baehr-Jones

Annika K. Martin (*pro hac vice*)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
akmartin@lchb.com
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: 212.355.9500
Facsimile: 212.355.9592

Mark P. Chalos (*pro hac vice*)
Betsy A. Sugar (*pro hac vice*)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
mchalos@lchb.com
bsugar@lchb.com
222 2nd Ave. S., Suite 1640
Nashville, TN 37201
Telephone: 615.313.9000
Facsimile: 615.313.9965

Elizabeth J. Cabraser (SBN 83151)
Michelle A. Lamy (SBN 308174)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
ecabraser@lchb.com
mlamy@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: 415.956.1000

Vanessa Baehr-Jones (SBN 281715)
**BAEHR-JONES LAW PC**
vanessa@advocatesforsurvivors.com
4200 Park Boulevard, No. 413
Oakland, CA 94602
Telephone: 510.500.9634

*Attorneys for Plaintiffs and the Proposed Classes*