UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JANE DOE 1, et al.<br>Plaintiff,<br>v.<br>X.AI CORP. et al.,<br>Defendants. | Case No. 5:26-cv-2246-PCP<br>**JOINT CASE MANAGEMENT STATEMENT** |

Pursuant to the Court's Order dated August 7, 2026 (Dkt. 34), Civil Local Rule 16-9, and the Court's Standing Orders, the Parties to the above-captioned action (the "Action") submit this Joint Case Management Statement.

**A. <u>Plaintiffs' Preliminary Statement</u>**

Given that motions to consolidate this Action with the Related Class Cases (see section X below) and for leadership are soon to be pending, the Plaintiffs submit this statement regarding this Action only, but Plaintiffs have contemplated its application to a consolidated action as well. In particular, Plaintiffs' proposed case schedule (section XV below) is designed to work as a master schedule across the Related Class Cases[1] (and, through discovery, for the *Doe V* Action)[2] should the motions for consolidation/coordination[3] and leadership be granted. Dkts. 41, 53-7, and 60. To that end, Plaintiffs' counsel have conferred with counsel for plaintiffs in the other Related Class Cases, who have advised that they are prepared to propose the same schedule in each of the Related Class Cases (and, for the *Doe V* Action, through discovery) to facilitate the streamlined advancement of the Related Class Cases together.

As Plaintiffs will explain in their oppositions, Defendants' motions to stay and sever, and the pending MDL Petition, do not justify delaying proceedings before this Court. There are immediate case-management and preservation needs before this Court. The Court can take meaningful steps without prejudging the pending motions or a Judicial Panel on Multidistrict Ligation determination. Any established schedule may be adjusted as warranted by subsequent rulings.

**B. <u>The X.AI Defendants' Statement</u>**

The X.AI Defendants respectfully submit that the October 15, 2026 conference should be continued, and this case briefly stayed, pending resolution of a recently filed petition before the

[1] *Doe 1 et al. v. X.AI Corp. et al.*, No. 5:26-cv-2246-PCP (N.D. Cal.) ("*Doe II*"); *Doe I et al. v. X.AI Corp. et al.*, No. 3:26-cv-08567-PCP (N.D. Cal.) ("*Doe III*"), *Doe et al. v. X.AI Corp. et al.*, No. 5:26-cv-00772-PCP (N.D. Cal.) ("*Doe I*"); and *Doe 1 et al. v. X .AI Corp. et al.*, No 5:26-cv-9016-PCP (N.D. Cal.) ("*Doe IV*") (together, the "Related Class Cases").

[2] *Doe 1 et al. v. X.AI Corp. et al.*, No. 5:26-cv-09617-PCP (N.D. Cal.) ("*Doe V*").

[3] Plaintiffs intend to file a motion for consolidation among the Related Class Cases and coordination with the *Doe V* Action shortly.

Judicial Panel on Multidistrict Litigation ("JPML"). This is one of 13 cases pending in multiple jurisdictions that raise similar issues. Currently, there are eight actions pending in the Western District of Arkansas and five actions pending in this Court. Recently, plaintiffs' counsel in some of the Arkansas cases filed a motion before the JPML seeking to transfer this Action and related cases under 28 U.S.C. § 1407 for coordinated or consolidated pretrial proceedings ("MDL Petition") in the Western District of Arkansas. The MDL Petition will be fully briefed by November 3, 2026, and will likely be heard at the JPML's December 3, 2026 hearing session, with a decision likely to issue before the end of the year. As explained in the X.AI Defendants' Motion to Stay Proceedings, Dkt. 70, the MDL Petition, if granted, would have a significant impact on all pre-trial matters in this and all other related actions. If the MDL Petition is granted, key pretrial decisions, including the appointment of leadership counsel, the filing of consolidated pleadings, and the setting of a case schedule, should be made by the transferee court overseeing the MDL. Proceeding with a case management conference in this Court while the MDL Petition is pending therefore risks an inefficient use of the Court's and the parties' resources. To preserve judicial economy and avoid substantial prejudice to the X.AI Defendants, a brief stay of all these cases until resolution of the pending MDL Petition is appropriate.

In light of the foregoing, the X.AI Defendants propose that the Court continue the Case Management Conference, which would allow time for the JPML to rule on the currently pending MDL Petition.

**C. <u>Stability's Preliminary Statement</u>**

Defendants Stability AI U.S. Servs. Corp. and Stability AI, Inc. ("Stability") respectfully submit that it is premature to set a case schedule for three reasons. First, Stability intends to file, in advance of next week's conference, a motion to sever the claims asserted against it from those asserted against X.AI. Second, Plaintiffs in a series of similar actions pending only against X.AI recently petitioned the Judicial Panel on Multidistrict Litigation to form an MDL and transfer this action into it. *See In re: x.AI/Grok Artificial Intelligence Minor Sexual Exploitation Litig.*, MDL No. 3205. Third, Plaintiffs' counsel in other similar cases brought against X.AI are still conferring over leadership, consolidation, and amended pleadings. *E.g.* Dkts. 50, 53, 54, 60.

This proliferation of basic threshold issues means that the parties, claims, and court are all presently unsettled. If the Court sets a schedule now, it will almost certainly have to be revisited in short order.

The prematurity of setting a schedule is exacerbated by the limited time the parties had to confer on this submission. Plaintiffs did not request to meet and confer until the afternoon of Friday, October 2, and did not provide their position statement until the evening of Tuesday, October 6. The parties therefore have had no meaningful opportunity to confer regarding the case schedule.

## I. JURISDICTION VENUE & SERVICE

The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 because this action arises under 18 U.S.C. §§ 2251(a), 2255(a), 2252A, and 18 U.S.C. §§ 1595, 1591(a)(1), 1594. The Court has diversity jurisdiction under 28 U.S.C. § 1332(a)(1) because there is diversity among the parties and an amount in controversy over $75,000. Under 28 U.S.C. §§ 1367(a), the Court may exercise supplemental jurisdiction over the state claims.

Defendants do not contest personal jurisdiction for purposes of this case.

Plaintiffs allege that venue is proper under 28 U.S.C. § 1391(b) because X.AI resides in this District, a substantial part of the alleged events giving rise to Plaintiffs' claims occurred in this District, including X.AI's alleged creation and distribution of AI-generated CSAM and minor sexualized content, and personal jurisdiction exists in this District.

On August 6, 2026, Plaintiffs served the Amended Complaint on the Defendants, Dkts. 35–39. Pursuant to a stipulation entered into by the Parties (Dkt. 46), Defendants' response to the Complaint is currently due 30 days after Plaintiffs have disclosed Plaintiffs' true names to Defendants. Dkt. 46. Plaintiffs will disclose their true names within two days of the entry of a forthcoming protective order between Plaintiffs and Defendants. *Id.*

## II. FACTS

### A. Plaintiffs' Statement

This case concerns whether Defendants are liable for the knowing production, possession, and distribution of AI-generated child sexual abuse material ("CSAM"), benefitting financially

from participating in the trafficking of CSAM, and for state law violations related to the creation and dissemination of and sexualized content depicting real, identifiable minors.

X.AI developed and released Grok, a proprietary generative AI model with image- and video-generation features. Despite the availability of industry-standard safeguards, X.AI did not implement adequate protections against the creation of sexually explicit content depicting minors. Instead, X.AI designed and marketed Grok's ability to generate "spicy" and "NSFW" content. X.AI users have created tens of thousands of images and videos constituting AI-generated CSAM and minor sexualized content with Grok. X.AI profited from this capability through paid premium subscriptions and third-party licensing arrangements, among other means.

Stability AI developed and released the open-weight generative AI models Stable Diffusion and SDXL. Although Stability AI had access to the same industry-standard safeguards, it failed to adequately implement them. Stability AI's open-weight models became the foundation for third-party "nudify" applications that create AI-generated CSAM and minor sexualized content. Stability AI deliberately reintroduced NSFW content into the training data for SDXL after removing it for Stable Diffusion 2.0, because the restricted version was less commercially successful.

Plaintiffs Jane Does 1-5 represent the class of minor victims harmed by Defendants' conduct. Defendants' AI products used images depicting them as minors to produce CSAM, which was then disseminated over the internet. This harm is permanent: Plaintiffs' CSAM images will remain on the internet for the rest of their lives. Plaintiffs have suffered significant damages as a result of Defendants' conduct, including but not limited to, severe emotional distress and psychological harm.

**B. <u>The X.AI Defendants' Statement</u>**

The X.AI Defendants deny Plaintiffs' allegations and deny that they are liable to Plaintiffs or to any member of the putative classes under any of the claims asserted in the Amended Complaint. The X.AI Defendants' response to the Amended Complaint is not yet due, *see* Dkt. 46, and the X.AI Defendants reserve all rights, defenses, and objections, including the right to

move to dismiss the Amended Complaint in its entirety. Nothing in this Joint Case Management Statement constitutes an admission of any fact alleged by Plaintiffs.

In particular, the X.AI Defendants condemn the creation and dissemination of any CSAM content in the strongest possible terms. To the extent any of the content alleged in the Amended Complaint exists, it was created and disseminated by third parties acting in violation of the X.AI Defendants' policies and terms of service, and notwithstanding the X.AI Defendants' efforts to prevent such misuse. The X.AI Defendants are not liable for the independent, wrongful, and in many instances criminal conduct of those third parties. The X.AI Defendants further deny that they knowingly or intentionally produced, possessed, distributed, or otherwise participated in the creation or dissemination of child sexual abuse material or sexualized content depicting minors, and deny that they benefitted, knowingly or otherwise, from participation in any sex trafficking venture.

The X.AI Defendants further deny that this Action may properly be maintained as a class action and deny that Plaintiffs can satisfy the requirements of Federal Rule of Civil Procedure 23 as to any of the proposed classes or subclasses. The X.AI Defendants will oppose any motion for class certification at the appropriate time.

The X.AI Defendants further note that their ability to respond to the specific factual allegations concerning Plaintiffs is presently limited. Plaintiffs are proceeding pseudonymously, and the X.AI Defendants have not yet received Plaintiffs' true identities or the identities of the individuals who allegedly created or disseminated the content at issue. The Parties are negotiating a protective order, and Plaintiffs have agreed to disclose their true names and the names of the individuals who allegedly created the deepfakes at issue within two days of its entry. *See* Dkt. 46. Until the X.AI Defendants receive that information and have an opportunity to investigate, they cannot meaningfully evaluate or respond to the allegations specific to each Plaintiff.

### C. <u>Stability's Statement</u>

Jane Doe Plaintiffs 1, 2, and 3, residents of Tennessee, assert claims against Stability regarding third-party criminals' alleged use of open-weight AI models purportedly created by

Stability to generate CSAM. Compl. ¶¶ 5–6; 14–18. Plaintiffs do not allege that Stability created the apps that were used to generate CSAM, that those apps ran on Stability's servers or that any CSAM was generated on Stability's servers, or that Stability received any revenue through those apps' use of Stability's open-weight models. Jane Does 4 and 5 purport to bring claims against all Defendants, but their factual allegations solely relate to X.AI, based on the conduct of two third-parties who allegedly used Grok to generate CSAM. Compl. ¶¶ 158–90.

Stability works hard to ensure that its generative AI services are safe, taking an open-first and safety by design approach to all of its models. Contrary to Plaintiffs' allegations, Stability did not develop and does not own the Stable Diffusion 1.0 through 1.5 models. Stability bans the misuse of its AI for illegal or harmful purposes and proactively safeguards its platform through continuous testing and identification of vulnerabilities. In the child safety space specifically, Stability collaborates with NCMEC and other organizations, including partnerships with Thorn and All Tech Is Human to implement child safety principles into its technologies and products to guard against the creation and spread of AI-generated CSAM.

Stability denies that Plaintiffs are entitled to the relief they seek.

## III. LEGAL ISSUES

### A. Plaintiffs' Position

Plaintiffs contend the principal legal issues presented in this case include the following:

1. Whether Defendants violated 18 U.S.C. §§ 2251(a), 2252A(a)(2), 2252A(a)(5)(B), 2252A(a)(7), and 2252A(f)(1) by producing, distributing, and possessing AI-generated CSAM depicting real, identifiable minors;

2. Whether Defendants knowingly benefitted from participating in a sex trafficking venture in violation of the Trafficking Victims Protection Act, 18 U.S.C. §§ 1591, 1594, and 1595;

3. Whether Defendants violated Cal. Civ. Code § 1708.86 and Cal. Bus. & Prof. Code § 17200 by creating and disclosing digitized sexually explicit material portraying minors;

4. Whether Defendants violated Tenn. Code §§ 39-17-1902 to 1904 by disclosing intimate digital depictions of minors without consent;

5. Whether Defendants' AI models were defectively designed because they permitted the creation of AI-generated CSAM and sexualized content depicting real minors, and whether feasible alternative designs existed;

6. Whether Defendants breached their duty of care by failing to implement industry-standard safeguards to prevent the creation and distribution of CSAM and minor sexualized content;

7. Whether Defendants' conduct constituted intentional and negligent infliction of emotional distress and public nuisance; and

8. Whether Plaintiffs may certify the proposed classes and subclasses under Rule 23 of the Federal Rules of Civil Procedure.

**B. <u>The X.AI Defendants contend the principal legal issues presented in this case include the following:</u>**

1. Whether Section 230(c)(1) of the Communications Decency Act, 47 U.S.C. § 230(c)(1), bars Plaintiffs' claims because they seek to treat the X.AI Defendants as the publisher or speaker of content created by third-party users, including users who generated and disseminated the challenged content in violation of the X.AI Defendants' terms of service and acceptable use policies;

2. Whether Section 230(c)(2), 47 U.S.C. § 230(c)(2), bars Plaintiffs' claims to the extent they are premised on the adequacy, design, or implementation of the safeguards, content filters, and enforcement measures the X.AI Defendants adopted in good faith to restrict access to or the availability of objectionable material;

3. Whether the X.AI Defendants may be held liable for the independent, intentional, and often criminal acts of third parties who misused the X.AI Defendants' products in violation of the X.AI Defendants' terms of service and contrary to the X.AI Defendants' active efforts to prevent such misuse, including whether those third-party acts constitute a superseding cause that defeats proximate causation;

4. Whether Plaintiffs can establish that the X.AI Defendants acted with the knowledge or intent required under 18 U.S.C. §§ 2251, 2252A, 2255, 1591, 1594, and 1595,

where the challenged content was generated by third-party users in contravention of the X.AI Defendants' policies and safeguards;

5. Whether Plaintiffs' state-law claims, including their product liability, negligence, and public nuisance claims, fail as a matter of law because generative AI software is not a "product" subject to product liability principles, the X.AI Defendants owed Plaintiffs no cognizable duty to prevent third-party misuse, or the claims are preempted by Section 230(e)(3);

6. Whether Plaintiffs' claims are barred by the First Amendment because they seek to hold the X.AI Defendants liable for at least some forms of speech that are protected by the Constitution;

7. Whether the third parties who created and disseminated the challenged content are necessary parties under Federal Rule of Civil Procedure 19; and

8. Whether Plaintiffs can satisfy the requirements of Federal Rule of Civil Procedure 23, including commonality, typicality, predominance, and superiority, where each Plaintiff's claims turn on individualized facts concerning the particular content, perpetrators, and alleged harm at issue.[4]

### C. <u>Stability's Position</u>

Stability anticipates that the following legal issues will be presented to the Court for resolution:

1. Whether Plaintiffs have stated a claim for which relief can be granted;

2. Whether joinder is proper under Federal Rule of Civil Procedure 20(a)(2);

3. Whether the Court should exercise its discretion under Rule 21 to sever all claims asserted against Stability from those asserted against X.AI Corp., X.AI LLC, and X.AI Holdings LLC;

4. Whether Plaintiffs may certify the proposed classes and subclasses under Rule 23 of the Federal Rules of Civil Procedure.

---

[4] Defendants reserve the right to raise additional legal questions and defenses in future pleadings.

## IV. MOTIONS

The motions listed below are currently pending or forthcoming. However, Plaintiffs' counsel in the Related Class Cases have sought leave to file a joint sur-reply to the Motion for Appointment as Interim Co-Lead Class Counsel, in which they set forth a proposal for joint leadership across the cases. Should the Court accept their proposal, it would resolve the first three pending motions listed below.

1. Motion for Appointment as Interim Co-Lead Class Counsel. Plaintiffs moved pursuant to Federal Rule of Civil Procedure 23(g) for appointment of Annika K. Martin of Lieff Cabraser Heimann & Bernstein, LLP and W. Daniel (Dee) Miles of the Beasley Allen Law Firm as Interim Co-Lead Class Counsel. The motion is currently set for hearing on October 15, 2026.

2. Motion to Intervene by Berger Montague. Plaintiffs in related action, *Doe, et al. v. x.AI Corp., et al.*, 5:26-cv-772, moved to intervene pursuant to Federal Rule of Civil Procedure 24(b) for the limited purpose of opposing the Motion for Appointment as Interim Co-Lead Class Counsel. The motion to intervene is currently set for hearing on October 15, 2026.

3. Motion to Intervene by Girard Sharp. Plaintiffs in the fourth-filed class action, *Doe, et al. v. x.AI Corp., et al.*, No. 5:26-cv-09016, moved to intervene for the limited purpose of responding to the Motion for Appointment as Interim Co-Lead Class Counsel. Girard Sharp asked the Court to hold the appointment motion in abeyance, resolve the pending relatedness and transfer motions, and set a status conference to discuss coordination and potential consolidation of the proposed class actions before addressing interim leadership. The motion to intervene is currently set for hearing on October 15, 2026.

4. Motion for Order Directing Preservation of Evidence. Plaintiffs moved for an order directing X.AI to immediately preserve all evidence in its possession, custody, or control that is potentially relevant to this action. The motion is based on public statements by X.AI's founder and CEO, Elon Musk, indicating that "all user data" uploaded to SpaceXAI would be "completely and utterly deleted," and X.AI's repeated failure to meaningfully engage with Plaintiffs' preservation requests. The X.AI Defendants oppose the motion based on Plaintiffs' failure to meet and confer in good faith and because it fails to raise a serious question about

preservation, as Plaintiffs' motion is premised entirely on a single X post regarding a product—Grok Build—that is unrelated to the allegations in this case. The X.AI Defendants remain willing to meet and confer further about this issue with Plaintiffs during any stay. The motion is currently set for hearing on October 15, 2026.

5. X.AI's Motion for a Stay Pending a Ruling by the JPML on Transfer and Consolidation. The X.AI Defendants have moved, under the Court's inherent authority, *see Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936), for a temporary stay of all pretrial proceedings and deadlines in this Action and the related actions pending in this District until the JPML rules on the pending MDL Petition. *See In re: x.AI/Grok Artificial Intelligence Minor Sexual Exploitation Litig.*, MDL No. 3205, Dkt. 2.

The motions listed below are currently anticipated.

6. Plaintiffs' Administrative Motion to File Sur-Reply to Motion to Appoint Interim Class Counsel

7. Plaintiffs' Motion to Consolidate and Coordinate Cases

8. Stability's Motion to Sever Based on Improper Joinder of Defendants

9. Stability's Motion to Dismiss

10. X.AI's Motion(s) to Stay Based on Existence of Criminal Proceedings. The X.AI Defendants anticipate that, once Plaintiffs reveal the identities of the Plaintiffs and the perpetrators related to their claims, the X.AI Defendants may file a motion for a mandatory stay of the pending matters under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), *see* 18 U.S.C. § 1595(b)(1), and/or the Victims of Child Abuse Act ("VCAA"), 18 U.S.C. § 3509(k).

11. X.AI's Motion to Dismiss. Defendants anticipate filing a motion to dismiss Plaintiffs' claims on numerous grounds.

## V. AMENDMENT OF PLEADINGS

The proposed schedules in Section XV provide Plaintiffs' and Defendants' respective positions as to the deadlines for the amendment of pleadings. Stability intends to file a motion to

sever all claims asserted against Stability from those asserted against X.AI Corp., X.AI LLC, and X.AI Holdings; if granted, that Motion would require further amendment of the Complaint.

## VI. EVIDENCE PRESERVATION

The Parties have reviewed the Guidelines for the Discovery of Electronically Stored Information ("ESI Guidelines"). The parties have not yet conferred pursuant to Fed. R. Civ. P. 26(f) regarding those guidelines. Plaintiffs intend to attempt to confer with Defendants soon about reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action.

## VII. DISCLOSURES

### A. Plaintiffs' Position

Plaintiffs propose exchanging Rule 26(a)(1) initial disclosures by October 21, 2026, which is 14 days after the parties' Rule 26(f) conference.

### B. The X.AI Defendants' Position

The proposed schedules in Section XV provide Plaintiffs' and Defendants' respective positions as to the exchange of Rule 26(a)(1) initial disclosures.

### C. Stability's Position

The parties have not yet conferred regarding Rule 26(a)(1) initial disclosures. Stability proposes that initial disclosures be due 30 days after the Court rules on Stability's anticipated motion to dismiss.

## VIII. DISCOVERY

Neither Plaintiffs nor Defendants have served discovery to date.

### A. Plaintiffs' Position

Plaintiffs anticipate seeking discovery of—*inter alia*—Defendants' development of their generative AI products including whether they disregarded the risk of their models' creating AI-generated CSAM and minor sexualized content, Defendants' notice and knowledge of their models creating AI-generated CSAM and minor sexualized content, and the contribution of the models' ability to created AI-generated CSAM and minor sexualized content to the commercial success of Defendants' products, as well as discovery relevant to identifying the class.

### B. The X.AI Defendants' Position

The X.AI Defendants anticipate seeking discovery related to Plaintiffs' claims, including discovery from Plaintiffs concerning the nature and extent of Plaintiffs' alleged injuries, the basis for Plaintiffs' belief that the X.AI Defendants' AI products were used in connection with their claimed injuries. The X.AI Defendants also anticipate seeking discovery from the perpetrators and other third parties related to each of Plaintiffs' claims, and, where applicable, from law enforcement related to the alleged creation of CSAM of the Plaintiffs by third parties using AI tools.

### C. Stability's Position

Because Plaintiffs have not yet disclosed their real identities, Stability cannot state with specificity the discovery it intends to seek, although it anticipates likely seeking discovery from each of Jane Does 1–3, their parents, relevant law enforcement entities, the alleged third-party criminal perpetrator, and the third-party app that was allegedly used by the criminal perpetrator to generate CSAM.

## IX. CLASS ACTIONS

As required by Civil Local Rule 16-9(b), all attorneys of record certify that they have reviewed the Procedural Guidance for Class Action Settlements and provide the following additional information regarding the Class Action allegations.

### A. Plaintiffs' Statement

Plaintiffs assert that class certification is appropriate because Plaintiffs can prove the elements of their claims, including damages, on a class-wide basis using the same evidence as would be used to prove these elements in individual actions alleging the same claim.

Plaintiffs intend to request that the Court certify a class under Fed. R. Civ. P. 23(b)(3) and/or Fed. R. Civ. P. 23(c)(4).

Plaintiffs intend to request that the Court certify the following classes:

> X.AI Class: All persons in the United States who had real images of themselves as minors altered by X.AI/Grok to produce images or videos of sexually explicit conduct or content with their faces and/or other distinguishing features reasonably identifiable.

> Tennessee X.AI Subclass: All persons in the state of Tennessee who had real images of themselves as minors altered by Grok to produce sexualized images or videos, constituting intimate digital depictions with their faces and/or other distinguishing features reasonably identifiable.
>
> Stability AI Class: All persons in the United States who had real images of themselves as minors altered by an app built upon a Stability AI model to produce images or videos of sexually explicit conduct or content with their faces and/or other distinguishing features reasonably identifiable.
>
> Tennessee Stability AI Subclass: All persons in the state of Tennessee who had real images of themselves as minors altered by an app built upon a Stability AI model to produce sexualized images or videos, constituting intimate digital depictions with their faces and/or other distinguishing features reasonably identifiable.

Plaintiffs seek to represent classes of individuals who had real images of themselves as minors altered to produce sexualized images or videos in which their faces and/or other distinguishing features reasonably identifiable. The complaint alleges that Defendants have created their models so as to be capable of creating AI-generated CSAM and minor sexualized content. Plaintiffs' and class members' claims will rise or fall on common questions of law and fact. The central issues include, but are not limited to (a) whether Defendants were aware of their respective AI models' ability to create and distribute CSAM and sexualized content featuring reasonably identifiable features of real minors; (b) whether Defendants profited from their respective AI models' ability to create CSAM and sexualized content featuring reasonably identifiable features of real minors; and (c) whether Defendants knowingly produced CSAM and sexualized content featuring reasonably identifiable features of real minors.

**B. <u>The X.AI Defendants' Statement</u>**

The X.AI Defendants deny that this Action may properly be maintained as a class action and contend that Plaintiffs cannot satisfy the requirements of Federal Rule of Civil Procedure 23 as to any of the proposed classes or subclasses. Among other deficiencies, the X.AI Defendants contend that Plaintiffs cannot establish commonality under Rule 23(a)(2) or typicality under Rule 23(a)(3), because Plaintiffs' claims, as alleged, appear to turn on individualized facts, including the particular images at issue, issues of conduct and intent, including of the specific third parties who allegedly created and disseminated them, the platforms and tools involved, and the nature

and extent of any alleged harm to each individual. For similar reasons, the X.AI Defendants anticipate that individualized questions would predominate over any common questions, and that a class action would not be superior to other available methods of adjudication, under Rule 23(b)(3), and that certification of any issue class under Rule 23(c)(4) would be inappropriate. The X.AI Defendants further anticipate raising questions regarding the ascertainability of the proposed classes and the adequacy of the proposed class representatives. Because the X.AI Defendants have not yet received Plaintiffs' true identities and discovery has not commenced, the X.AI Defendants reserve all rights to oppose class certification on these and any other grounds at the appropriate time.

### C. Stability's Statement

Plaintiffs bring personal injury claims that sound in product liability, negligence, and related theories. *See generally* Compl. Such claims are uniquely unsuited for class certification, as courts routinely recognize. While Stability anticipates identifying additional issues with Plaintiffs' proposed classes, the nature of Plaintiffs' claims alone is dispositive.

## X. RELATED CASES[5]

### A. Plaintiffs' Statement

On March 16, 2026, Plaintiffs moved to relate their action with *Doe v. x.AI Corp., et al.*, No. 5:26-cv-772 (N.D. Cal.) (*Doe I*) given the overlapping defendants and underlying common facts. Dkt. 3. The Court related the actions on March 26, 2026. Dkt. 16.

On August 24, 2026, counsel for plaintiffs in *Doe I, et al. v. x.AI Corp., et al.*, No. 3:26-cv-8567 (N.D. Cal.) (*Doe III*) filed a notice to relate, which the Court granted on September 22, 2026. *Doe v. SpaceXAI Corp*., No. 5:26-cv-772-PCP (N.D. Cal. Sept. 22, 2026), Dkt. 79 (hereinafter "Order Relating Cases").

On August 26, 2026, counsel for plaintiffs in *Doe 1, et al. v. x.AI Corp., et al.*, No. 5:26-cv-9016 (N.D. Cal.) (*Doe IV*) filed a notice to relate, which the Court granted on September 22, 2026. Order Relating Cases, Dkt. 79.

---

[5] Stability is not named as a defendant in any of the cases identified in this section.

On September 11, 2026, counsel for plaintiffs in *Doe 1, et al. v. x.AI Corp., et al.*, No. 5:26-cv-9617 (N.D. Cal.) (*Doe V*) filed a notice to relate, which the Court granted on September 22, 2026. Order Relating Cases, Dkt. 79.

**B. The X.AI Defendants' Statement**

In addition to the Related Actions pending in this District, at least eight actions asserting similar allegations against Defendants are pending in the United States District Court for the Western District of Arkansas. Each of those actions, together with this Action and the other Related Actions, is the subject of the motion to transfer and consolidate filed with the JPML on October 2, 2026, which seeks centralization of all such actions in the Western District of Arkansas. *See In re: x.AI/Grok Artificial Intelligence Minor Sexual Exploitation Litig.*, MDL No. 3205, Dkt. 2; *see also* Section IV, *supra*. The Western District of Arkansas actions are:

(1) *Doe 3 v. X. AI Corp., et al.*, No. 5:26-cv-05193 (W.D. Ark.);

(2) *Doe v. X.AI Corp., et al.*, No. 5:26-cv-05204 (W.D. Ark.);

(3) *Doe 4 v. X. AI Corp., et al.*, No. 5:26-cv-05218 (W.D. Ark.);

(4) *Doe v. X. AI Corp., et al.*, No. 5:26-cv-05226 (W.D. Ark.);

(5) *Doe 1, et al. v. X. AI Corp., et al.*, No. 5:26-cv-05231 (W.D. Ark.);

(6) *Doe v. X. AI Corp., et al.*, No. 5:26-cv-05232 (W.D. Ark.);

(7) *Doe 1 v. X. AI Corp., et al.*, No. 5:26-cv-05241 (W.D. Ark.); and

(8) *Doe 6 v. X. AI Corp., et al.*, No. 5:26-cv-05242 (W.D. Ark.).

## XI. RELIEF

**A. For Plaintiffs**

Plaintiffs seek judgment against the Defendants and in favor of the proposed classes, as well as the following relief: (a) the certification of the proposed classes, the appointment of Plaintiffs' counsel as class counsel, and the designation of class representatives, under Rule 23; (b) the award of damages in favor of Plaintiffs and the class against Defendant for all damages sustained as a result of Defendants' unlawful creation and dissemination of AI-generated CSAM and minor sexualized content, including statutory damages or (at Plaintiffs' election) actual damages, restitution, or disgorgement of profits and prejudgment interest thereon as permitted by

law; (c) an order permanently enjoining Defendants' from engaging in their alleged unlawful conduct; and (d) an order awarding Plaintiffs and the proposed Class costs, expenses, and attorneys' fees as permitted by law.

**B. For X.AI Defendants**

X.AI Defendants deny that Plaintiffs are entitled to any of the requested relief, including class certification, damages of any kind, restitution, disgorgement, injunctive relief, or attorneys' fees and costs. X.AI Defendants have not asserted any counterclaims and do not seek relief at this time, other than dismissal of Plaintiffs' claims and such other relief as the Court deems appropriate.

With respect to the Court's requirement that any party from whom damages are sought describe the bases on which it contends damages should be calculated if liability is established, X.AI Defendants state that liability has not been established and that X.AI Defendants deny that any liability exists. Any description of a damages methodology would be premature at this early stage, before X.AI Defendants have received Plaintiffs' true identities, before any discovery has been taken, before the Court has ruled on X.AI Defendants' anticipated motion to dismiss, and before any determination as to class certification. Nothing in this Statement constitutes an admission that Plaintiffs or any putative class member has suffered any cognizable injury or is entitled to damages in any amount or under any theory. X.AI Defendants reserve all rights to address the proper measure of damages, if any, including through expert testimony, at the appropriate stage of this litigation.

**C. For Stability**

Stability seeks dismissal of all claims with prejudice.

## XII. SETTLEMENT AND ADR

Plaintiffs and X.AI Defendants are open to discussing settlement at any appropriate time.

Stability submits that any discussion of settlement is premature in light of the procedural posture of this case.

## XIII. OTHER REFERENCES

The parties do not consent to transfer the case to a U.S. Magistrate Judge for all purposes (including trial).

From Plaintiffs' perspective, there may be occasion to appoint special masters to handle certain aspects of the case at the appropriate time, *e.g.* to handle settlement, CSAM evidence issues, issues related to minor plaintiffs, and/or others as the need may arise.

Stability does not believe that special masters are likely to be warranted in this case.

This dispute is not subject to, and would not benefit from, binding arbitration.

On October 2, 2026, plaintiffs in six related Arkansas cases filed a motion with the Judicial Panel on Multidistrict Litigation to create an MDL in the Western District of Arkansas. Plaintiffs anticipate requesting that the MDL be centralized before this Court. X.AI Defendants anticipate supporting the formation of an MDL to oversee pre-trial proceedings across the related actions and maintains that a stay of all actions in this District and the Western District of Arkansas is appropriate while the JPML considers the pending MDL Petition.

## XIV. NARROWING OF ISSUES

### A. Plaintiffs' Statement

From Plaintiffs' perspective, issues that can be narrowed by voluntary agreement of the parties would include Defendants' agreement not to bring any further motions to transfer or stay these proceedings.

Plaintiffs do not presently believe the case should be bifurcated in any way.

Plaintiffs do not presently believe there are structural ways to shorten a future trial.

From Plaintiffs' perspective, the issues most critical to resolving the case all involve key discovery, to wit: 1) Defendants' policies and procedures relating to Defendants' development, design, training on, and creation of sexualized content depicting minors during the class period; 2) Defendants' records of user uploads, prompts, downloads, and sexualized content depicting minors created therefrom, including records sufficient to quantify and identify generation of, storage of, access to, and dissemination of CSAM and other sexualized content depicting minors; and, 3) Defendants' internal and external communications, including with third parties, including

class members, law enforcement, and regulatory agencies/bodies regarding its challenged conduct, including communications concerning the risks, prevalence, and responses to such conduct and all complaints, reports, investigations regarding such conduct.

**B. The X.AI Defendants' Statement**

The X.AI Defendants respectfully submit that the most effective and efficient way to narrow the issues before the Court is to continue the Case Management Conference until after the JPML rules on the pending motion to transfer and consolidate. *See* Sections IV and XV, *infra*. The JPML's decision will determine whether this Action and the other Related Actions proceed in this District or before a transferee court, which actions will be coordinated or consolidated, and the resulting structure of the litigation. Any steps taken to narrow issues before that decision risk being duplicative, premature, or superseded by the transferee court. The X.AI Defendants therefore cannot agree to forgo motions to transfer or stay these proceedings, which are directed at ensuring that this litigation proceeds in the most orderly and efficient manner.

For similar reasons, the X.AI Defendants believe it is premature to address bifurcation, trial structure, or other structural means of shortening a future trial at this time. In addition to the pending JPML motion, the Stability AI Defendants anticipate moving to sever the claims against them, which may materially affect how this litigation is organized and which parties proceed together. Until the JPML has ruled and the question of severance is resolved, the Parties and the Court lack the information needed to evaluate whether bifurcation, phased proceedings, bellwether trials, or other structural measures would be appropriate. The X.AI Defendants reserve all rights to propose such measures at the appropriate time.

**C. Stability's Position**

As will be explained in Stability's forthcoming motion to sever, severing the claims against Stability from those against X.AI would simplify this action and narrow the issues.

## XV. SCHEDULING

**A. Plaintiffs' Position**

Plaintiffs suggest the following case schedule, noting that as there are pending motions regarding leadership and consolidation, this case schedule contemplates serving as a master

schedule in the Related Class Cases (and, through discovery, in the *Doe V* Action) should the motions for consolidation/coordination and leadership be granted. To that end, Plaintiffs' counsel have conferred with counsel for plaintiffs in the other Related Actions, who have advised that they are prepared to propose the same schedule in each of those Actions to facilitate the streamlined advancement of the cases together. As Plaintiffs will explain in their oppositions, Defendants' motions to stay and sever, and the pending MDL Petition, do not justify delaying proceedings before this Court. These cases present immediate case-management and preservation needs that remain regardless of whether particular claims ultimately proceed separately or in another forum. Establishing a coordinated schedule and addressing those needs now will reduce duplication, protect against the loss of relevant evidence, and advance work useful to the litigation wherever it proceeds. The Court can take those steps without prejudging the pending motions or the Panel's determination, and can adjust the schedule as warranted by subsequent rulings.

| Case Event | Deadline |
|---|---|
| Deadline to exchange Rule 26(a)(1) initial disclosures | October 21, 2026 |
| Deadline to file an amended, consolidated complaint should the motion to consolidate be granted | November 13, 2026 |
| Defendants' Motion to Dismiss | December 14, 2026 |
| Plaintiffs' Opposition to Motion to Dismiss | January 19, 2027 |
| Defendants' Reply to Plaintiffs' Opposition to Motion to Dismiss | February 2, 2027 |
| The Parties substantially complete document production.[6] | March 29, 2027 |
| Deadline to Amend Pleadings | April 29, 2027 |
| Close of Fact Discovery | July 29, 2027 |
| Opening Expert Reports Due | July 30, 2027 |
| Rebuttal Expert Reports Due | August 30, 2027 |
| Close of Expert Discovery | November 1, 2027 |
| Plaintiffs' Class Certification Motion | December 3, 2027 |
| Defendants' Response to Plaintiffs' Class Certification Motion | January 3, 2028 |

[6] "Substantially complete" means that "all relevant sources of documents have been reviewed, responsive documents have been identified and reviewed, and those documents have been disclosed," such that "the parties have the documents they need to fully understand the facts of this case, conduct depositions, and engage in other, non-documentary discovery as well as motions practice and trial." *Berry v. Hennepin Cnty.,* 2023 WL 1777467, at *2 (D. Minn. Feb. 6, 2023).

| | |
|---|---|
| Plaintiffs' Reply to Defendants' Response to Plaintiffs' Class Certification Motion | January 24, 2028 |
| Opening Merits Expert Reports Due | February 23, 2028 |
| Rebuttal Merits Expert Reports Due | March 24, 2028 |
| Close of Merits Expert Discovery | May 23, 2028 |
| Opening Motions for Summary Judgment and any *Daubert* Motions | June 22, 2028 |
| Responses for Summary Judgment and any *Daubert* Motions | July 20, 2028 |
| Replies for Summary Judgment and any *Daubert* Motions | August 14, 2028 |
| Pretrial Conference | January 16, 2029 at 10:00 AM |
| First Day of Trial | January 30, 2029[7] |

**B. <u>The X.AI Defendants' Statement</u>**

The X.AI Defendants respectfully submit that this Action should be stayed pending the JPML's decision on the motion to transfer and consolidate in *In re: x.AI/Grok Artificial Intelligence Minor Sexual Exploitation Litig.*, MDL No. 3205. *See* Sections III and IX, *supra*. The transfer motion will be fully briefed by November 3, 2026, and the X.AI Defendants anticipate that it will be heard at the JPML's December 3, 2026 hearing session, with a decision likely to follow shortly thereafter. Because any schedule entered now may be superseded or modified by a transferee court, setting case deadlines before the JPML rules would risk wasting the resources of the Court and the Parties. *Degulis v. LXR Biotechnology, Inc.*, 928 F. Supp. 1301, 1309 (S.D.N.Y. 1996); *see also Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1360–62 (C.D. Cal. 1997). The X.AI Defendants therefore propose that the Court continue the Case Management Conference until after the JPML issues its decision on the MDL Petition.

Moreover, it is premature to set a schedule for dispositive motions, discovery, and trial in these matters at this juncture. In addition to the uncertainty surrounding whether the JPML will consolidate these actions and in which district, the Plaintiffs—who have expressed an intent to see consolidation of these actions—have not yet filed an operative amended complaint, nor have they (in most instances) even disclosed who the plaintiffs were. Once they file an amended complaint and disclose necessary details about their claims to the X.AI Defendants pursuant to a

[7] Plaintiffs are cognizant of the Court's preference for a 24-month schedule from CMC to trial, but submit that the size and complexity of this case warrant the extra 3.5 months in Plaintiffs' proposed schedule.

protective order, the X.AI Defendants will move to dismiss and to stay discovery while the substantial and potentially dispositive legal issues in their motion to dismiss are pending. *Tradebay, LLC v. eBay, Inc.*, 278 F.R.D. 597, 601 (D. Nev. 2011) ("The purpose of Federal Rule of Civil Procedure 12(b)(6) is to enable defendants to challenge the legal sufficiency of a complaint without subjecting themselves to discovery." (citing *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987))). Until the Court resolves those motions, it is premature to set a schedule through trial for these actions.

Even if the Court were inclined to consider a full case schedule at this juncture, Plaintiffs' proposal is unworkable. For one, their proposal presumes that fact discovery will proceed while the X.AI Defendants' motion to dismiss is pending, which is unlikely given the strong precedent supporting a stay of discovery in cases such as this. Plaintiffs' proposal further contemplates an unreasonably compressed period for briefing on any motions to dismiss as well as fact discovery, including Rule 26(a) disclosures before an operative complaint has even been filed, substantial completion of document production by March, and a short four-month period to conduct further third-party and deposition discovery across five coordinated actions. Moreover, Plaintiffs' schedule contemplates an unduly compressed briefing schedule for summary judgment and *Daubert* that affords the Court virtually no time to review the briefs, hold argument, and render decisions on those motions prior to trial. This proposal is particularly problematic given that the X.AI Defendants currently anticipate that, should any of these claims survive motions to dismiss, there will yet be significant factual and legal deficiencies in these claims that should be resolved prior to trial at the summary judgment stage.

Accordingly, there are numerous reasons why setting a case schedule at this juncture is premature. Any consideration of these matters should be stayed until after the JPML has rendered a decision on MDL formation and location. That said, should the Court decide to enter a scheduling order, the X.AI Defendants request that the Order be limited to the deadlines set forth below, with the expectation that the Court will convene a subsequent status conference once the Court rules on the X.AI Defendants' motion to stay that will follow any forthcoming motion to dismiss:

| Case Event | Deadline |
|---|---|
| Deadline to file a stipulated protective order | October 26, 2026 |
| Disclosure of the identities of Plaintiffs and the perpetrators | November 13, 2026 |
| Deadline to file an amended, consolidated complaint should the motion to consolidate be granted | November 13, 2026 |
| Defendants' Motion to Dismiss, Motion to Stay Based on Related Criminal Proceedings, and/or Motion to Stay Discovery Pending Resolution of Motion to Dismiss | January 13, 2027 |
| Plaintiffs' Opposition to Defendants' Motions | March 13, 2027 |
| Defendants' Reply Brief(s) | April 13, 2027 |
| Close of Fact Discovery | November 16, 2027 |
| Opening Class Expert Reports | November 17, 2027 |
| Rebuttal Class Expert Reports | December 17, 2027 |
| Close of Class Expert Discovery | February 15, 2028 |
| Plaintiffs' Class Certification Motion | March 15, 2028 |
| Defendants' Response to Plaintiffs' Class Certification Motion | April 15, 2028 |
| Plaintiffs' Reply to Plaintiffs' Class Certification Motion | April 30, 2028 |
| Case Management Conference | 2 weeks after order on class certification |

**C. <u>Stability's Position</u>**

As set forth above, Stability's position is that it is premature to set a case schedule. In the alternative, Stability proposes the below schedule to govern this case through the motion to dismiss phase. Should the Court wish to enter a comprehensive case schedule immediately, Stability requests the opportunity to further confer with Plaintiffs, in light of the minimal opportunity the parties had to discuss scheduling. Stability's proposed schedule assumes that the Court grants its forthcoming motion to sever.

| Case Event | Deadline |
|---|---|
| Deadline to file an amended complaint against Stability only | December 11, 2026 |
| Stability's Motion to Dismiss | January 22, 2027 |
| Plaintiffs' Opposition to Motion to Dismiss | February 12, 2027 |
| Stability's Reply in Support of Motion to Dismiss | February 26, 2027 |
| Motion to Dismiss Hearing | March 18, or another date convenient to the Court |

## XVI. TRIAL

Plaintiffs have requested a jury trial. The Parties cannot accurately predict the length of trial before discovery has begun. At this early stage, however, Plaintiffs anticipate trial would require 15-20 full court days, or the equivalent, depending on the Court's preferred trial schedule for this matter.

## XVII. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

Plaintiffs filed a Certificate of Interested Entities pursuant to Local Rule 3-15, on March 19, 2026, and July 7, 2026. Dkts. 9, 29. Plaintiffs restate the contents of their certification.

SpaceXAI LLC (f/k/a X.AI LLC), and SpaceXAI Holdings LLC (f/k/a X.AI Holdings LLC) filed a Rule 7.1 Corporate Disclosure Statement and Certification Pursuant to Local Rule 3-15 on September 17, 2026. Dkt. 59. Defendants restate the contents of their respective certifications.

Stability filed a Certificate of Interested Entities pursuant to Local Rule 3-15 on August 27, 2026 at Dkt. 47. As stated in that filing:

1. Stability AI, Inc. is a Delaware holding company and has no parent corporation.
2. No publicly held corporation owns 10% or more of the stock of Stability AI, Inc.
3. Stability AI US Services Corporation is a Delaware corporation. The parent company of Stability AI US Services Corporation is Stability AI, Inc.
4. No publicly held corporation owns 10% or more of the stock of Stability AI US Services Corporation.

5. The undersigned counsel of record for Stability AI, Inc. and Stability AI US Services Corporation certifies that no party (or parties) other than the named parties has a financial interest of any kind in the subject matter in controversy or in a party to the proceeding, or any other kind of interest that could be substantially affected by the outcome of the proceeding.
6. The undersigned counsel of record Stability AI, Inc. and Stability AI US Services Corporation further certifies that Stability is unaware of any conflict the presiding judge may have with the parties to the litigation.

## XVIII. PROFESSIONAL CONDUCT

All attorneys of record have reviewed the Guidelines for Professional Conduct for the Northern District of California.

Dated: October 8, 2026

Respectfully submitted,

By: ____________________
Annika K. Martin

Annika K. Martin (*pro hac vice*)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
akmartin@lchb.com
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: 212.355.9500
Facsimile: 212.355.9592

Elizabeth J. Cabraser (SBN 83151)
Michelle A. Lamy (SBN 308174)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
ecabraser@lchb.com
mlamy@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: 415.956.1000

Mark P. Chalos (*pro hac vice*)
Betsy A. Sugar (*pro hac vice*)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
mchalos@lchb.com
bsugar@lchb.com
222 2nd Ave. S., Suite 1640
Nashville, TN 37201
Telephone: 615.313.9000
Facsimile: 615.313.9965

Vanessa Baehr-Jones (SBN 281715)
**BAEHR-JONES LAW PC**
vanessa@advocatesforsurvivors.com
4200 Park Boulevard, No. 413
Oakland, CA 94602
Telephone: 510.500.9634

*Attorneys for Plaintiffs and the Proposed Classes*

By: */s/ Isaac Chaput*

Isaac D. Chaput
Cecilia M. Bobbitt
Salesforce Tower
COVINGTON & BURLING LLP
415 Mission Street, Suite 5400
San Francisco, California 94105-2533
(415) 591-6000
ichaput@cov.com
cbobbitt@cov.com

Emily J. Henn
COVINGTON & BURLING LLP
3000 El Camino Real, 5 Palo Alto Square
Palo Alto, CA 94306
(650) 632-4700
ehenn@cov.com

*Counsel for Defendants Stability AI, Inc. and Stability AI US Services Corporation*

By: */s/ Joel Kurtzberg*

Joel Kurtzberg (pro hac vice forthcoming)
Ivan Torres (pro hac vice forthcoming)
CAHILL GORDON & REINDEL LLP
32 Old Slip
New York, New York 10005
Telephone: 212.701.3120
jkurtzberg@cahill.com
itorres@cahill.com

Adrian Sawyer, State Bar No. 203712
SAWYER & LABAR LLP
1700 Montgomery Street, Suite 108
San Francisco, California 94111
Telephone: 415.262.3820
sawyer@sawyerlabar.com

*Counsel for the X.AI Defendants*

**SIGNATURE CERTIFICATION**

Pursuant to Civ. L.R. 5-1(h)(3), I hereby attest that all signatories listed, and on whose behalf the filing is submitted, concur in this filing's content and have authorized this filing.

Dated: October 8, 2026

Annika K. Martin